### HOWARD B. HILLMAN *v.* TOWN OF GREENWICH
#### (14048)

PETERS, C. J., SHEA, CALLAHAN, GLASS and HULL, Js.

Argued December 13, 1990—decision released February 26, 1991

*James M. Macauley,* for the appellant (defendant).
*James C. Riley,* for the appellee (plaintiff).

HULL, J. The plaintiff, Howard B. Hillman, brought an action for damages and injunctive relief against the

defendant, the town of Greenwich, alleging that unlawful and unreasonable drainage of surface storm water by the defendant had damaged the plaintiff's property. The trial court, *Hauser, J.,* rendered judgment, in part, for the plaintiff and the defendant appealed to the Appellate Court. We transferred the appeal to ourselves pursuant to Practice Book § 4023.

The following facts are not in dispute. The plaintiff owns two adjacent parcels of real property in the town of Greenwich, the first located at 29 Taconic Road and the second at 564 North Street. The parcels were purchased by the plaintiff in 1974 and 1981 respectively. Catch basins and storm drains built and maintained by the defendant on North Street collect surface storm water which is drained into a brook that flows naturally over the plaintiff's North Street property. Eventually, the water flows over a dam and into the lower of two ponds located on the plaintiff's Taconic Road property and then over a second dam where it finally exits under Taconic Road. The water flow causes erosion on the plaintiff's North Street property, which in turn causes the deposit of silt into the ponds located on the plaintiff's Taconic Road property.

The plaintiff's second amended complaint, pursuant to which this case was tried, alleged that because of the construction of catch basins and storm drains on North Street by the defendant and the development of properties in the nearby Dewart Road and Alpine Road subdivisions that were approved by the defendant, the surface storm water collected and diverted over the plaintiff's property was in excess of that which would naturally flow and drain over it and that, therefore, the drainage was unlawful and unreasonable. The complaint set forth four counts in support of the plaintiff's claim as follows: (1) continuing trespass; (2) private nuisance; (3) violation of General Statutes

§ 13a-138;[1] and (4) negligence. The trial court rendered judgment, in part, for the plaintiff, having found that the defendant had violated § 13a-138 and had created and maintained a private nuisance. The trial court awarded damages to the plaintiff and, thereafter, enjoined the defendant from maintaining the nuisance and ordered the defendant to take the measures necessary to abate the nuisance.

On appeal, the defendant claims that the trial court should have: (1) dismissed the original complaint because it was not accompanied by a writ of summons; (2) concluded that the plaintiff's cause of action under § 13a-138 was time-barred; (3) concluded that the defendant had not violated § 13a-138, even if the plaintiff's cause of action thereunder was timely; (4) rejected the plaintiff's private nuisance claim, since the sole allegation offered in support of that claim, a violation of § 13a-138, was barred; (5) concluded that the plaintiff had the obligation to pass the water through the brook on his property; (6) stricken the plaintiff's testimony regarding damage caused by the brook, because allegations concerning the brook were at variance with his pleadings; and (7) found that the town had acquired prescriptive rights to drain water into the brook.

I

A

We consider the first three claims together. The defendant first claims that because the plaintiff's first complaint was not accompanied by a writ of summons, the trial court should have dismissed it. We agree.

---

[1] General Statutes § 13a-138 (a) provides: "Persons authorized to construct or to repair highways may make or clear any watercourse or place for draining off the water therefrom into or through any person's land so far as necessary to drain off such water and, when it is necessary to make any drain upon or through any person's land for the purpose named in this section, it shall be done in such a way as to do the least damage to such land."

On September 15, 1986, the plaintiff served the original complaint in this action on the defendant without a writ of summons. On October 28, 1986, the defendant filed a timely motion to dismiss the complaint for lack of personal jurisdiction, because there was no writ of summons attached to the complaint. On November 13, 1986, the plaintiff served the first amended complaint, with a return date of October 14, 1986, on the defendant. The first amended complaint was identical to the original complaint in all respects, except that it included a writ of summons.[2] Thereafter, the trial court, *Emmet, J.,* denied the defendant's motion to dismiss the original complaint and the defendant filed a notice of its intention to appeal the trial court's decision.

Practice Book § 49 provides that "[m]esne process in civil actions shall be a writ of summons . . . describing the parties, the court to which it is returnable and the time and place of appearance, and shall be accompanied by the plaintiff's complaint. Such writ . . . shall be signed by a commissioner of the superior court . . . . [T]he writ of summons shall be on a form substantially in compliance with . . . Form 103.1 (JD-CV-1) . . . ." See also General Statutes § 52-45a.[3] " 'In ordinary usage of the term, [a summons is the] original process upon a proper service of which an action is commenced and the defendant therein named brought within the jurisdiction of the court . . . .' Ballentine's Law Dictionary (3d Ed.). A summons is part of a cita-

---

[2] The second amended complaint, pursuant to which the case was tried, was filed on January 5, 1989.

[3] General Statutes § 52-45a provides: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day and the date and place for the filing of an appearance. The writ shall be accompanied by the plaintiff's complaint. The writ may run into any judicial district and shall be signed by a commissioner of the superior court or a judge or clerk of the court to which it is returnable."

tion. 'The citation . . . is a command to a duly authorized officer to summon the [defendant] . . . to appear in court on a specific day to answer the [complaint].' *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* 148 Conn. 336, 338–39, 170 A.2d 732 (1961)." *State* v. *One 1981 BMW Automobile,* 5 Conn. App. 540, 543–44, 500 A.2d 961 (1985).

It is undisputed that the complaint served by the plaintiff on September 15, 1986, did not include a writ of summons in compliance with Form 103.1. Moreover, our examination of the original complaint reveals only a bare bones complaint, totally lacking in any direction to the proper officer for service or a command to summon the defendant to appear in court. This cryptic complaint is in marked contrast to Form 103.1, which contains detailed instructions and notice to each defendant that should convey to all but the most obtuse his exact rights and obligations. Nevertheless, the trial court denied the defendant's motion to dismiss for lack of jurisdiction.

The trial court considered *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* supra, 339, wherein we held that "[t]he citation, signed by competent authority, is the warrant which bestows upon the officer to whom it is given for service the power and authority to execute its command. . . . Without it, the officer would be little more than a deliveryman. *Hartley* v. *Vitiello,* 113 Conn. 74, 79, 154 A. 255 [1931]." (Citations omitted.) The trial court distinguished, however, our upholding of the dismissal for lack of jurisdiction in *Village Creek Homeowners Assn.* from the present case, on the ground that the then existing statutory procedure for instituting an appeal from the public utilities commission included the specific requirement that such an appeal be brought with a proper citation. The court then denied the motion to dismiss because all of the essential information required

by § 49, including a description of the parties, the court to which it is returnable, the return date, the complaint and the signature of a commissioner of the Superior Court, had been included in the plaintiff's initial complaint.

We find the trial court's distinction unpersuasive. Contrary to the trial court's finding, a writ of summons is a statutory prerequisite to the commencement of a civil action. General Statutes § 52-45a. A writ of summons is analogous to a citation in an administrative appeal; *Sheehan* v. *Zoning Commission,* 173 Conn. 408, 412, 378 A.2d 519 (1977); *State* v. *One 1981 BMW Automobile,* supra, 544; it is an essential element to the validity of the jurisdiction of the court. *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* supra; *State* v. *One 1981 BMW Automobile,* supra. Although the writ of summons need not be technically perfect, and need not conform exactly to the form set out in the Practice Book; see *McQuillan* v. *Department of Liquor Control,* 216 Conn. 667, 671–73, 583 A.2d 633 (1990); the plaintiff's complaint must contain the basic information and direction normally included in a writ of summons. Because the plaintiff in this case failed to comply in any fashion with these basic requirements, we conclude that the trial court should have granted the defendant's motion to dismiss the complaint filed September 15, 1986, for lack of personal jurisdiction over the defendant.

The court, further, should not have concluded that the amended complaint "cured" the absence of a writ of summons from the original complaint. *Sheehan* v. *Zoning Commission,* supra, 413; *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* supra, 340. Contrary to the trial court's determination, the defect was jurisdictional, not circumstantial in nature and, thus, the pleading was not precluded from

abatement under General Statutes § 52-123.[4] " '[Section 52-123] is used to provide relief from defects in the text of the writ itself but is not available to cure irregularities in the service or return of process.' [*Rogozinski* v. *American Food Service Equipment Corporation,* 211 Conn. 431, 434, 559 A.2d 1110 (1989)]." *Pack* v. *Burns,* 212 Conn. 381, 386, 562 A.2d 24 (1989). We conclude, therefore, that the trial court should not have found that the service of a writ of summons with the amended complaint on November 13, 1986, "cured" the absence of service of process on September 15, 1986.

B

The defendant next claims that because the plaintiff's action was not commenced until the service of the second complaint, which contained a writ of summons, on November 13, 1986, the action under § 13a-138 was barred as untimely. We agree.

General Statutes § 13a-138a provides in part that after October 1, 1986, "[n]o action shall be brought by the owner of land adjoining a public highway . . . for recovery of damage to such property . . . by reason of any draining of water into or through such land by any town . . . of the state pursuant to subsection (a) of section 13a-138 . . . if such drainage first occurred prior to October 1, 1981 . . . ." " 'In Connecticut, an action is commenced on the date of service of the writ upon the defendant. . . .' " (Citations omitted.) *McGaffin* v. *Roberts,* 193 Conn. 393, 401–402 n.9, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985); see also *Lacasse* v.

---

[4] General Statutes § 52-123 provides: "CIRCUMSTANTIAL DEFECTS NOT TO ABATE PLEADINGS. No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

*Burns,* 214 Conn. 464, 475, 572 A.2d 357 (1990). It is undisputed that the drainage in this case first occurred prior to October 1, 1981, and that the writ of summons was served upon the defendant on November 13, 1986. The plaintiff having failed to commence the action before October 1, 1986, we conclude that the plaintiff's cause of action pursuant to § 13a-138 was barred as untimely under § 13a-138a.

## C

The defendant next claims that the trial court should not have concluded that the defendant had violated § 13a-138. In view of our conclusion that the plaintiff's action under § 13a-138 was barred, we do not reach this claim.

## II

## A

We need not tarry in considering the defendant's remaining claims. The defendant claims that because the trial court's finding of a violation of § 13a-138 was the sole basis supporting its finding of a private nuisance, the judgment must be reversed. We do not agree.

In finding that a private nuisance existed, the court determined that the defendant's "use of the land [was] unreasonable *and* unlawful." (Emphasis added.) Furthermore, in its judgment of April 24, 1990, the trial court stated that in its judgment of September 1, 1989, it had found the issue of monetary damages for the plaintiff, based on the alternate theories of private nuisance and violation of § 13a-138. Thus, the court made it clear that the finding of a nuisance was not dependent on its finding of a violation of § 13a-138. We conclude, therefore, that the finding of a private nuisance, alone, supports the trial court's judgment for the plaintiff.

## B

The defendant next claims that the trial court should have found that the plaintiff had an obligation to pass the water in the brook through his property. The defendant has offered two arguments in support of this claim. Neither persuades us.

First, the defendant argues that unknown and unnamed downstream and upstream property owners may have prescriptive rights to have the water flow through the brook as it has for some years. "It has long been recognized that a person is not 'entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity.' *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953)." *Nye* v. *Marcus,* 198 Conn. 138, 141–42, 502 A.2d 869 (1985); see also *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 389, 512 A.2d 152 (1986); *Maloney* v. *Pac,* 183 Conn. 313, 321, 439 A.2d 349 (1981). We conclude, therefore, that the defendant is without standing to raise the speculative claims of unknown persons who are not parties to this action.

The defendant next argues that the plaintiff had impliedly agreed to pass the water in those quantities and velocities that have flowed since he purchased the property. The basis for this argument is that the plaintiff purchased the North Street property after the recording of a subdivision map of the property, which noted that subsequent grantees agreed "to maintain the watercourse so as to permit the free flowing of the water therein." The plaintiff does not contest that the volume and velocity of water presently causing damage to his property was essentially the same at the time that he purchased the property. Nevertheless, an agree-

ment to maintain a watercourse to permit the free flow of the water therein is not a commitment to permit the flow of an unreasonable, possibly torrential volume of water that others may direct into the watercourse. We conclude that the only common sense interpretation of this phrase is that grantees of the North Street property are obligated to maintain the watercourse so as to permit the lawful and reasonable free flowing of the water therein. The recorded notation in no way establishes immunity for the defendant from liability for a nuisance.

## C

The defendant next claims that because the plaintiff used the phrase "surface storm water" repeatedly in his complaint when describing the cause of the damage to his property, and surface storm water is legally distinguishable from a brook, the plaintiff's testimony regarding damage caused by the drainage of the brook should have been stricken as at variance with the pleadings. The trial court denied this claim stating that "[t]his court's review of the original complaint, amended complaint, disclosure of experts, exhibits entered during trial, special defenses filed by the defendant, the plaintiff's deposition given several months before trial, etc. leads it to the conclusion that a variance, if any, was immaterial and the defendant's request that the plaintiff's testimony be stricken is denied." We agree with the trial court.

" 'A variance is a departure of the proof from the facts as alleged. Not every variance, however, is a fatal one since immaterial variances are disregarded under our practice. Practice Book § [178] . . . . Only material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment. . . . ' *Strimiska* v. *Yates*, 158 Conn. 179, 183, 257 A.2d 814

(1969); *Web Press Services Corporation* v. *New London Motors, Inc.,* 203 Conn. 342, 359–60, 525 A.2d 57 (1987); *Fuessenich* v. *DiNardo,* [195 Conn. 144, 151–52, 487 A.2d 514 (1985)]; *O'Connor* v. *Dory Corporation,* 174 Conn. 65, 68, 381 A.2d 559 (1977)." *Tedesco* v. *Stamford,* 215 Conn. 450, 461, 576 A.2d 1273 (1990). Although the second amended complaint frequently refers to surface storm water, our examination of it indicates that it was this surface storm water flowing through the plaintiff's brook in unreasonable volume and velocity that the plaintiff claimed as the cause of the damage to his property. Furthermore, the defendant did not claim that it "was prejudiced in maintaining [its] defense on the merits, or that [it] was surprised by the plaintiff's proof, or that [it] was misled by the allegations in the complaint." *Strimiska* v. *Yates,* supra, 184. Accordingly, we conclude that because the variance was immaterial, the trial court properly denied the defendant's request to strike the testimony of the plaintiff regarding the brook.

## D

In its counterclaim the defendant asserted that it had prescriptive rights to drain into the brook. The trial court rejected this claim, citing *Lawton* v. *Herrick,* 83 Conn. 417, 424, 76 A. 986 (1910). We agree with the trial court.

In *Lawton,* the plaintiff, an owner of a saw mill and ice harvesting operation, brought an action for damages and injunctive relief against the defendant, an upstream cider mill operator, for discharging into a brook sawdust, pomace and other refuse, which flowed down to and polluted the plaintiff's mill pond. Id., 419. The defendant claimed a prescriptive right to use the brook to carry off the refuse resulting from the operation of his mill. Id., 423. In concluding that the defendant was not entitled to a jury charge to that effect, we

stated that "[a] riparian proprietor cannot acquire by any prescription a right to maintain a nuisance . . . . *Platt Bros. & Co.* v. *Waterbury,* 72 Conn. 531, 548, 45 Atl. 154 [1900]; *Morgan* v. *Danbury,* 67 Conn. 484, 493, 35 Atl. 499 [1896]. The claim of such a right in another's land is unnatural and unreasonable, and is not sanctioned by law. A prescription to be valid must be reasonable. *Merwin* v. *Wheeler,* 41 Conn. 14, 25 [1874]." Id., 424–25. The defendant has brought forth no authority from any jurisdiction to the contrary. We conclude, therefore, that the trial court properly denied the defendant's counterclaim.

The judgment is affirmed.

In this opinion the other justices concurred.