DEANNA BOYLES *v.* RICHARD PRESTON
(AC 20353)

Mihalakos, Flynn and Shea, Js.

Argued September 28, 2001—officially released March 12, 2002

*Richard Preston,* pro se, the appellant (defendant).

*Monika Lahiri,* with whom, on the brief, was *Hanon W. Russell,* for the appellee (plaintiff).

*Opinion*

SHEA, J. The defendant, Richard Preston, appeals from the judgment of the trial court, rendered after a jury trial, awarding damages to the plaintiff, Deanna Boyles, in the amount of $105,201.34. On appeal, the defendant claims that the court improperly (1) determined that his motion to dismiss was untimely when it was filed within thirty days of his filing an appearance in the case-in-chief, but not within thirty days of his filing an appearance for the plaintiff's prejudgment remedy hearing, (2) failed to charge the jury on a requested instruction on sexual harassment where the complaint failed to set forth a claim that the defendant's conduct was that of his employer or that of the defendant as the agent of his employer, (3) allowed an investigator from the office of the state's attorney to testify about information in a previous criminal case against the defendant, the record of which had been erased pursuant to General Statutes § 54-142a, (4) allowed the admission into evidence in this civil case of evidence that had been suppressed in the previous criminal case and (5) accepted the plaintiff's offer of judgment as being valid where one partner in the law firm representing the plaintiff had signed the offer with the name of another partner in that firm. We affirm the judgment of the trial court.

The following facts are relevant to our disposition of the defendant's appeal. This case is a civil action arising from alleged sexual harassment that resulted in the intentional and negligent infliction of emotional dis-

tress. The plaintiff was employed by the state of Connecticut to perform duties in the small claims session and Housing Session of the Superior Court, geographical area number ten, in New London. The defendant was employed by the state of Connecticut as an attorney in the office of the state's attorney in the same building. The complaint alleges that in late May, 1992, the defendant began to engage in a pattern of "intentionally injurious, unwelcome and unwanted" conduct directed toward the plaintiff. That conduct included a variety of actions of an inappropriate or harassing nature, including sexual advances toward the plaintiff, touching and rubbing the plaintiff without her consent, stalking and following the plaintiff in the workplace, telephoning the plaintiff at various hours of the day and night, and videotaping her without her knowledge or consent.

The complaint alleges that despite demands by the plaintiff for the defendant to cease and desist in that conduct, his behavior continued throughout the remainder of 1992. As a direct and proximate result of that conduct, the plaintiff claimed that she was and is in constant fear for her safety, has suffered and continues to suffer emotional and psychological distress, has had and continues to have her life disrupted, was and continues to be unable to eat and sleep normally and otherwise to engage in and enjoy life's activities as she had previously, suffers from anxiety, pain, suffering and distress of mind, and was compelled to leave her employment with the state of Connecticut, thereby losing wages and benefits.

The complaint alleges that the defendant's conduct constituted intentional, wilful and wanton, as well as negligent, infliction of emotional distress, and assault and battery on the plaintiff. In her prayer for relief, the plaintiff claimed actual damages, punitive damages, attorney's fees, and such other and further relief as required in equity.

The revised complaint is dated June 17, 1996, and copies thereof were mailed to the defendant and to his attorney on that date. The trial began on October 5, 1999. The jury returned a verdict for the plaintiff on October 13, 1999, and awarded her $50,000 in compensatory damages. In response to an interrogatory, the jury also made a finding that the defendant's conduct was malicious, wanton or wilful. On November 15, 1999, following a hearing in which the court determined the amount of punitive damages to be $16,650, the court rendered judgment for the plaintiff in accordance with the verdict and awarded her $105,201.34, inclusive of punitive damages, statutory interest and costs. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly determined that his motion to dismiss was untimely because it was filed within thirty days of filing an appearance in the case-in-chief, but not within thirty days of filing an appearance for the prejudgment remedy hearing. We hold that the defendant's motion did not comply with Practice Book § 10-30, which requires that a party intending to challenge the court's personal jurisdiction over him do so within thirty days of filing an appearance.

The plaintiff filed an application for a prejudgment remedy, which was served on the defendant on May 23, 1995. On June 22, 1995, attorney Susan Boyan filed an appearance for the defendant and represented him at the hearing on the application held on August 8, 1995, when the court granted the plaintiff a prejudgment remedy in the amount of $60,000. A process server engaged by the plaintiff made the attachment on August 10, 1995, and the complaint was served on the defendant on August 11, 1995. The defendant then filed two

motions to dismiss. The first motion, dated October 4, 1995, claimed that the court lacked personal jurisdiction over him because the process served on him did not include a writ of summons as prescribed by Practice Book § 49, now § 8-1. The defendant subsequently filed an amended motion to dismiss, dated October 25, 1995, in which he conceded that a writ of summons had been served, but raised a number of different issues contesting the court's jurisdiction over him as well as the court's subject matter jurisdiction.[1]

In an articulation of its rulings denying both of the defendant's motions to dismiss, the court held that the filing of a general appearance by the defendant's counsel on June 22, 1995, to contest the application for prejudgment remedy, "triggered the thirty day period for the filing of a motion to dismiss on the ground of lack of personal jurisdiction under the plain language of § 10-30 of the Practice Book, and that the defendant's 'right to make such a claim was waived thirty-one days after [his attorney's] original appearance on [that date].' "

---

[1] In the accompanying memorandum of law in support of the amended motion to dismiss, the defendant's claims are set forth as follows: (1) Is the hearing on the application for the prejudgment remedy a separate and distinct proceeding? (2) In an action in which the plaintiff serves an application for a prejudgment remedy, if, after a hearing is held, the plaintiff subsequently serves a writ of summons and complaint, when does the action for damages commence? (3) Is the use of an improper form fatal? (4) Is a writ that fails adequately to direct the process server as to the nature of the documents to be served legally sufficient? (5) Is the service of process insufficient as a matter of law where the process server's return is defective on its face because it is signed and sealed on the day before the server attests to the service of the documents? (6) Is the partner of the subscribing authority prohibited from entering into a recognizance upon the writ? (7) Is dismissal required because the scope of the allegations in the plaintiff's complaint broadens the cause of action into areas outside the subject matter jurisdiction of the court?

The court allowed the plaintiff to file an amended recognizance to cure that particular defect and denied on the merits the defendant's motion to dismiss as to the alleged lack of subject matter jurisdiction.

Practice Book § 10-30 provides in relevant part: "Any defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance. . . ." Our courts have held that where a party has submitted to the court's jurisdiction by contesting an application for prejudgment remedy on the merits, that action will suffice as a general appearance in the case-in-chief. See *Iffland Lumber Co.* v. *Tucker*, 33 Conn. Sup. 692, 694–96, 368 A.2d 606 (1976). Once the application for prejudgment remedy and the accompanying documents are filed properly with the clerk of the court, "the case is then pending in court . . . . The court becomes seized of the matter by virtue of the filing of the application, and the hearing on the application should be treated like any other interlocutory proceeding in a pending case." Id., 695. Thus, having failed to seek to dismiss the action within thirty days of filing his appearance to contest the application for prejudgment remedy, the defendant's motion properly was denied as untimely.

Notwithstanding our conclusion with respect to the timeliness of the defendant's first motion to dismiss, we turn our attention to the merits of his motions to dismiss for lack of personal jurisdiction. The defendant based his motion on three alleged defects in the process served on him. Specifically, he claims that dismissal was proper because (1) the reservice of the prejudgment remedy face sheet, form JD-CV-53, as the face sheet for the case-in-chief, was contrary to statute, materially misled him as to the nature of the proceedings described in the process that was served and contained incorrect directions as to how to proceed, which, if followed, would have led to a default judgment against him, (2) the writ of summons failed to contain proper directions to the serving officer and was, therefore, insufficient,

and (3) the return of service was insufficient because the document was dated before the actual date of service of the process. We conclude that the defects in process complained of are circumstantial, rather than substantive, and do not warrant dismissal of the action.

General Statutes § 52-123 provides that "[n]o writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court." Section 52-123 is used to provide relief from defects found in the text of the writ itself. *Rogozinski* v. *American Food Service Equipment Corp.*, 211 Conn. 431, 434–35, 559 A.2d 1110 (1989). "It is not the policy of our courts to interpret rules and statutes in so strict a manner as to deny a litigant the pursuit of its complaint for mere circumstantial defects. . . . Indeed, § 52-123 of the General Statutes protects against just such consequences, by providing that no proceeding shall be abated for circumstantial errors so long as there is sufficient notice to the parties." (Citations omitted.) *Hartford National Bank & Trust Co.* v. *Tucker*, 178 Conn. 472, 477–78, 423 A.2d 141 (1979), cert. denied, 445 U.S. 904, 100 S. Ct. 1079, 63 L. Ed. 2d 319 (1980). It is our expressed policy preference "to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court. . . . The design of the rules of practice is both to facilitate business and to advance justice; they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice. . . . Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Citations

omitted; internal quotation marks omitted.) *Coppola* v. *Coppola*, 243 Conn. 657, 665, 707 A.2d 281 (1998).

### A

We first consider the reservice of the prejudgment remedy face sheet. After a prejudgment remedy is granted, the clerk of the court is to deliver to the applicant's attorney the "proposed writ, summons and complaint for service of process. . . ." General Statutes § 52-278d (b). Our Supreme Court has held that the use of an improper form is a circumstantial defect that does not deprive the court of jurisdiction if the form "clearly apprises all concerned that a lawsuit is being instituted . . . ." *Chestnut Realty, Inc.* v. *Commission on Human Rights & Opportunities*, 201 Conn. 350, 357, 514 A.2d 749 (1986).

We are not persuaded by the defendant's argument that the service of process at issue "materially misled the defendant as to the nature of the proceedings . . . and contained incorrect directions . . . on how to proceed . . . ." Service was made on the defendant on August 11, 1995. At that time, judgment in favor of the plaintiff's application for prejudgment remedy already had entered on August 8, 1995, following a hearing in which the defendant was represented by an attorney. The defendant concedes that the service of process contained a writ of summons and complaint. The writ clearly indicates that it was being served to "summon the above named defendant to appear before the superior court . . . on August 29, 1995 . . . in a civil action in which the plaintiff complains and alleges as set forth in the accompanying complaint attached hereto and made a part hereof." We are compelled to conclude that the service satisfied the statutory requirements and was sufficient to apprise the defendant that an action was being commenced. We conclude, therefore, that, where the prejudgment remedy face sheet is served on

the defendant together with the appropriate forms as prescribed by § 52-278d (b), such service is sufficient to vest the court with jurisdiction.

## B

The defendant also asserts that the summons was fatally defective because it lacked the proper direction to the process server as to the nature of the documents to be served. That claim is without merit. Practice Book § 8-1 (a) provides in relevant part that "[m]esne process . . . shall be a writ of summons . . . describing the parties, the court to which it is returnable and the time and place of appearance, and shall be accompanied by the plaintiff's complaint. Such writ . . . shall be signed by a commissioner of the superior court . . . . [T]he writ of summons shall be on a form substantially in compliance with . . . [Form 103.1 (JD-CV-1)][2] . . . ." See also General Statutes § 52-45a.[3] "[A] writ of summons is a statutory prerequisite to the commencement of a civil action. . . . [I]t is an essential element to the validity of the jurisdiction of the court. . . . [T]he writ of summons need not be technically perfect, and need not conform exactly to the form set out in the Practice Book . . . ." (Citations omitted.) *Hillman* v. *Greenwich*, 217 Conn. 520, 526, 587 A.2d 99 (1991). "A writ must contain a direction to a proper officer for service and a command to summon the defendant to appear in court." *General Motors Acceptance Corp.* v. *Pumphrey*, 13 Conn. App. 223, 228, 535 A.2d 396 (1988).

[2] The direction to the process server contained in judicial form JD-CV-1, civil summons, is "to make due and legal service of this summons and attached complaint."

[3] General Statutes § 52-45a provides in relevant part: "Civil actions shall be commenced by legal process consisting of a writ of summons or attachment, describing the parties, the court to which it is returnable, the return day, the date and place for the filing of an appearance and information required by the Office of the Chief Court Administrator. The writ shall be accompanied by the plaintiff's complaint. . . ."

Despite the defendant's claim to the contrary, the writ properly directs the serving officer to serve the defendant with the summons and attached complaint. As previously discussed, as long as the process served on the defendant comports with the basic statutory requirements, a circumstantial defect will not deprive the court of jurisdiction. See *Hillman* v. *Greenwich*, supra, 217 Conn. 527.

C

We are equally unpersuaded by the defendant's claim with respect to the apparent discrepancy regarding the date of the return of service. At least one court has held that where the defendant was given timely notice of the claims against him, the omission of the date on the writ of summons and the process server's failure to sign the return of service are circumstantial defects that do not warrant dismissal of an action. *Krondes* v. *O'Boy*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 135694 (April 18, 1994). The return of service here properly was executed and clearly indicates that the defendant was served on August 11, 1995. The defendant does not dispute that he was in fact served on that date. We conclude that the defendant could not have been prejudiced or misled by the date appearing at the top of the return indicating that the document was prepared on the day prior to service. Therefore, even if the court had considered the defendant's motion to dismiss on the merits, dismissal would have been inappropriate given the substance of the alleged defects in the process served on the defendant.

II

The defendant next claims that the court improperly failed to charge the jury on a requested instruction on sexual harassment. We disagree.

The following additional facts are relevant to our disposition of the defendant's claim. In his answer to

the first count of the revised complaint, the defendant pleaded a special defense in which he claimed that the allegations of that count constitute a claim of sexual harassment, as defined in General Statutes § 46a-60 (a) (5)[4] and (8),[5] and that the action was barred because the plaintiff never filed a complaint with the commission on human rights and opportunities (commission), and (2) never received a release, as required by General Statutes §§ 46a-100 and 46a-101,[6] to file her action in Superior Court. In his third special defense to the second count of the complaint, the defendant pleaded essentially the same defense, claiming that the plaintiff's failure to file a complaint with the commission and to obtain a release pursuant to §§ 46a-100 and 46a-101 barred the action.

The court did not charge the jury on either of those special defenses. In response to the defendant's post-trial motion for articulation, the court explained that it had declined to charge on the special defenses because the plaintiff's complaint did not include a claim that the conduct of the defendant was the conduct of the defendant's employer "by himself or [by the defendant as the employer's] agent . . . ." General Statutes § 46a-

---

[4] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice . . . (5) [f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so . . . ."

[5] General Statutes § 46a-60 (a) provides in relevant part: "It shall be a discriminatory practice . . . (8) [f]or an employer, by himself or his agent . . . to harass any employee . . . on the basis of sex. 'Sexual harassment' shall, for the purposes of this section, be defined as any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when . . . (C) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment . . . ."

[6] General Statutes §§ 46a-100 and 46a-101 permit a person who has timely filed a complaint with the commission to bring an action in Superior Court after obtaining a release from the commission.

60 (a) (8). The court stated: "Since the statutory scheme set forth in § 46a-60 was not implicated either by the pleadings or the trial evidence, no charge relating to § 46a-60 et seq. was warranted."

We agree with the court that the plaintiff's complaint states no claim against the defendant's employer, which was the state of Connecticut at the time the defendant's wrongful acts occurred. Section 46a-60 provides a cause of action, "rooted in common law agency principles, on which to hold an employer liable for the conduct of its employees."[7] (Internal quotation marks omitted.) *Brittell* v. *Dept. of Correction,* 247 Conn. 148, 167, 717 A.2d 1254 (1998). Nothing in the legislative history of § 46a-60 or its text suggests that the intention of the legislature was to insulate an employee perpetrator from primary liability for his wrongful conduct or to preclude either a common-law action for emotional distress or an action for assault and battery against a fellow employee.

### III

The defendant next claims that the court improperly allowed an investigator from the office of the state's attorney to testify about information in a previous criminal case against the defendant, the records of which had been erased pursuant to § 54-142a. We disagree.

The challenged testimony consisted of information relating to records that had been erased following a determination by the Superior Court that the evidence involved had been obtained as a result of a search of the defendant's residence that was made without

---

[7] For an action against an employer for sexual harassment under General Statutes § 46a-60 to be successful, the plaintiff must show that "the employer provided no reasonable avenue for complaint, or . . . the employer knew (or should have known) of the harassment but unreasonably failed to stop it." (Internal quotation marks omitted.) *Brittell* v. *Dept. of Correction,* 247 Conn. 148, 167, 717 A.2d 1254 (1998).

probable cause in violation of the fourth and fourteenth amendments to the United States constitution, and article first, § 7, of the constitution of Connecticut.[8]

Before the trial began, the defendant filed a motion in limine dated September 17, 1999, in which he requested that the videotape taken from his house during the unlawful search be excluded from evidence during the trial. The defendant asserted that the underlying criminal matter had been dismissed and, therefore, the videotape had become an erased record within the meaning of § 54-142a. In an articulation explaining its ruling denying the defendant's request to exclude the

---

[8] In his principal brief, the defendant sets forth the circumstances of the illegal search as follows: "On November 4, 1994, the defendant's residence was searched pursuant to a warrant issued to inspectors in the division of criminal justice to search for and seize various items, including videotapes." Pursuant to Practice Book §§ 41-12 and 41-13, and General Statutes § 54-33f, the defendant on January 30, 1996, filed a motion to suppress any evidence seized from his residence during the search. On May 7, 1996, that search was adjudicated by the court to have been unconstitutional in violation of the fourth and fourteenth amendments to the United States constitution, and article first, § 7, of the constitution of Connecticut. The court issued an order suppressing "all evidence and fruits illegally seized from the defendant's residence." The underlying criminal matter was dismissed on May 5, 1998, and was erased pursuant to General Statutes § 54-142a.

One of the items seized by the inspectors during their search of the defendant's residence was a videotape of the plaintiff at her home, which had been taken by a woman he had become acquainted with. The defendant during his cross-examination admitted that he had asked the woman to take some videotapes of the plaintiff in July, 1992. He testified that he was expecting to get some videotape of the plaintiff entering or leaving the courthouse. He admitted that he had supplied the woman with his videocamera when he left for a vacation in Hawaii on August 7, 1992, and that she returned two videotapes to him with his camera after he had returned to the New London area. He testified that he never looked at the videotapes until November, 1992, and that he erased one of the videotapes because it was not what he was expecting to get. He kept the videotapes in his office, but later moved them to his house. He taped over one videotape and put the second one in his camera to tape it over, but the camera and videotape were removed from his house by a police inspector when the house was searched by the police.

videotape, the trial judge explained that he had learned that when the charges were dismissed in the underlying criminal case, the presiding judge had ordered that the videotape be preserved for any future civil litigation. The court stated also that the portion of the motion in limine relating to the videotape had been denied on the ground that the videotape is not a "record" as defined in § 54-142a.

We agree with the court that the videotape is not a record subject to erasure pursuant to § 54-142a (b), which applies only to "all police and court records and records of the state's or prosecuting attorney or the prosecuting grand juror pertaining to such charge . . . ." Our courts have held that the term "records" in the Erasure Act does not include evidence obtained by the police in the course of an investigation, nor does it preclude the testimony of witnesses as to their personal recollection of events. See *Rado* v. *Board of Education*, 216 Conn. 541, 550–52, 583 A.2d 102 (1990) (testimony concerning observations of events admissible where witnesses in testifying did not use any record subject to erasure); *State* v. *West*, 192 Conn. 488, 496–97, 472 A.2d 775 (1984) (photographs obtained by police at time of arrest not records under § 54-142a).

Thus, the videotape of the plaintiff is not a police or court record subject to erasure pursuant to § 54-142a (b). The videotape simply is a piece of evidence demonstrating how far the defendant went to irritate the plaintiff because she had rejected his sexual advances. We affirm the judgment of the trial court in permitting the challenged testimony to come into evidence.

IV

The defendant also claims that the court improperly allowed the admission into evidence in this civil case of evidence that had been suppressed in the prior criminal

case against him.[9] We conclude that the court properly admitted the evidence.

The defendant argues that because the evidence had been suppressed in the prior criminal matter, it therefore was inadmissible in this matter pursuant to General Statutes § 54-33f (c). That subsection provides in relevant part that "[i]f the motion [to suppress unlawfully seized evidence] is granted, the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial." General Statutes § 54-33f (c). Our Supreme Court has held that § 54-33f is "procedural rather than substantive and [does] not define the extent of the exclusionary rule under Connecticut law." *State* v. *Marsala,* 216 Conn. 150, 157, 579 A.2d 58 (1990). Section 54-33f merely provides an aggrieved party with a mechanism by which to petition the court for the suppression or the return of property that independently has been found to have been obtained unlawfully. The extent to which unlawfully seized property may be suppressed as evidence must, therefore, be decided by reference to our jurisprudence concerning implementation of the constitutional protections against unreasonable searches or seizures afforded by the fourth and fourteenth amendments to the United States constitution and article first, § 7, of the constitution of Connecticut. Id., 156.

"[T]he exclusionary rule is neither intended nor able to cure the invasion of the defendant's rights which he has already suffered." (Internal quotation marks omitted.) Id., 161. "[T]he [exclusionary] rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures . . . .

---

[9] The facts relating to the seizure and subsequent suppression of the subject property are set forth in part III.

Application of the rule is thus appropriate in circumstances in which this purpose is likely to be furthered. . . . [I]n the complex and turbulent history of the rule, the [United States Supreme] Court never has applied it to exclude evidence from a civil proceeding, federal or state. *Immigration & Naturalization Service* v. *Lopez-Mendoza* [468 U.S. 1032, 1041–42, 104 S. Ct. 3479, 82 L. Ed. 2d 778 (1984)] (holding that rule does not apply in deportation proceedings); see also *Pennsylvania Board of Probation & Parole* v. *Scott,* 524 U.S. 357, 363, 118 S. Ct. 2014, 141 L. Ed. 2d 344 (1998) (recognizing that [court has] repeatedly declined to extend the exclusionary rule to proceedings other than criminal trials' and holding that rule not applicable in parole revocation proceedings); *United States* v. *Janis,* 428 U.S. 433, 448, 454, 96 S. Ct. 3021, 49 L. Ed. 2d 1046 (1976) (holding that rule does not apply in civil tax proceedings); *United States* v. *Calandra,* 414 U.S. 338, 343–46, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974) (holding that rule does not apply in grand jury proceedings). [B]ecause the rule is prudential rather than constitutionally mandated, [it has been held] to be applicable only where its deterrence benefits outweigh its substantial social costs. . . . *Pennsylvania Board of Probation & Parole* v. *Scott,* supra, 363. [T]he need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search. *United States* v. *Calandra,* supra, 348." (Citations omitted; internal quotation marks omitted.) *Fishbein* v. *Kozlowski,* 252 Conn. 38, 52–53, 743 A.2d 1110 (1999).

Because the use of evidence in a civil proceeding "falls outside the offending officer's zone of primary interest . . . exclusion of such evidence will not significantly affect a police officer's motivation in conducting a search." (Citation omitted; internal quotation marks

omitted.) Id., 53. When the court granted the defendant's motion to suppress on May 7, 1996, and issued an order suppressing the use in the defendant's criminal trial of "all evidence and fruits illegally seized from the defendant's residence," including the videotape, the deterrent effect of the exclusionary rule was complete. See *United States* v. *Janis*, supra, 428 U.S. 448 (recognizing that "the local law enforcement official is already 'punished' by the exclusion of the evidence in the state criminal trial"). The further exclusion of that evidence from subsequent civil proceedings, in which the state has no particular vested interest, would not provide any greater deterrence to law enforcement officials. Accordingly, we affirm the judgment of the court in admitting the evidence.

## V

The defendant's final claim involves the offer of judgment that the plaintiff filed prior to the trial pursuant to Practice Book § 17-14 as authorized by General Statutes § 52-192a (a) and (b). Specifically, the defendant claims that the court improperly accepted the plaintiff's offer of judgment as being valid where one partner in the law firm representing the plaintiff had signed the offer with the name of another partner in that firm. We hold that the offer of judgment sufficiently complied with Practice Book § 17-14.

On June 20, 1996, the plaintiff, through her trial attorney, offered to stipulate to a judgment against the defendant for $30,000. The defendant did not, within thirty days after being notified of the offer, file with the clerk of the court a written acceptance of the offer signed by the defendant or the defendant's attorney pursuant to Practice Book § 17-15. The defendant's failure to accept the plaintiff's offer of judgment subjected him

to the penalty set forth in Practice Book § 17-18.[10] In this case, the court, pursuant to General Statutes § 52-192a,[11] included in the calculation of the amount of the judgment the sum of $35,608.39 for interest that accrued from August 11, 1995, to November 15, 1999.

The defendant disputes the interest award on the ground that the offer of judgment filed by the plaintiff was defective in that the signature thereon, although purporting to be that of Hanon W. Russell, the attorney who conducted the trial for the plaintiff, actually had been inscribed on that document by one of Russell's law partners, Edward Cantor, as authorized by Russell. The defendant relies on § 52-192a (a), which provides in relevant part that a plaintiff seeking damages "may before trial file with the clerk of the court a written 'offer of judgment' *signed by him or his attorney . . .*" (Emphasis added.) The defendant also cites Practice Book § 4-2 in support of his claim. Practice Book § 4-2 (a) in relevant part directs that "[e]very pleading and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name. . . . The name of the attorney or party who signs such document shall be legibly typed or printed beneath the signature."

---

[10] Practice Book § 17-18 provides in relevant part: "If the judicial authority ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in that plaintiff's 'offer of judgment,' the judicial authority shall add to the amount so recovered 12 percent annual interest on said amount, computed as provided in General Statutes § 52-192a, may award reasonable attorney's fees in an amount not to exceed $350, and shall render judgment accordingly. . . ."

[11] General Statutes § 52-192a (b) provides in relevant part: "In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the 'offer of judgment' was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the 'offer of judgment' was filed. . . ."

The court rejected the defendant's claim that the offer of judgment was wholly ineffective on the ground that Russell had authorized his partner to sign the document as his agent. We agree with the court that the validity of the offer of judgment was not impaired because Cantor had been authorized by Russell to sign Russell's name to the document.

"The well-settled general rule is that the mere fact that the agent's name does not appear in a contract or other instrument executed by him in the name of the principal alone does not render the execution insufficient, unless a statute provides otherwise." 3 Am. Jur. 2d 676, Agency § 172 (1986). "The most satisfactory test of whether a statute is mandatory or merely directory is whether the prescribed mode of action is of the essence of the thing to be accomplished, or in other words whether it relates to matter of substance or to matter of convenience. . . . Where the thing required to be done is one of substance the statutory provision is mandatory. . . . However . . . provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where . . . they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words. . . . Such a statutory provision is one which prescribes what shall be done but does not invalidate action upon a failure to comply." (Citations omitted; internal quotation marks omitted.) *Broadriver, Inc.* v. *Stamford,* 158 Conn. 522, 529, 265 A.2d 75 (1969), cert denied, 398 U.S. 938, 90 S. Ct. 1841, 26 L. Ed. 2d 270 (1970).

"The purpose of § 52-192a is to encourage pretrial resolution of disputes by allowing a plaintiff to make an offer and allowing a defendant to accept a reasonable offer of settlement to save the time and expense of trial. . . . [I]n construing § 52-192a, we first note that its purpose is to encourage pretrial settlements and, consequently, to conserve judicial resources. . . .

[T]he strong public policy favoring the pretrial resolution of disputes . . . is substantially furthered by encouraging defendants to accept reasonable offers of judgment. . . . Section 52-192a encourages fair and reasonable compromise between litigants by penalizing a party that fails to accept a reasonable offer of settlement. . . . In other words, interest awarded under § 52-192a is solely related to a defendant's rejection of an advantageous offer to settle before trial and his subsequent waste of judicial resources." (Citations omitted; internal quotation marks omitted.) *Flynn* v. *Kaumeyer*, 67 Conn. App. 100, 107, 787 A.2d 37 (2001).

We conclude, with respect to § 52-192a (a), that the plaintiff substantially complied with the statutory requirements and that the defendant was in no way disadvantaged by the mere circumstantial defect in the filing of the offer of judgment. The document filed with the court afforded the defendant actual notice as to the existence and terms of the offer, and any irregularity with the signature could not possibly have misled or prejudiced him.

"The rules of statutory construction apply with equal force to Practice Book rules." *Grievance Committee* v. *Trantolo*, 192 Conn. 15, 22, 470 A.2d 228 (1984). Applying the foregoing analysis, our courts have concluded that the provisions of Practice Book § 4-2 are directory rather than mandatory and that failure to comply strictly with those requirements does not invalidate the action taken. *Krondes* v. *O'Boy*, Superior Court, judicial district of Fairfield, Docket No. 309700 (February 24, 1995). Accordingly, we affirm the judgment of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.