[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case, which was tried by an attorney trial referee, is directed against the town of Greenwich and its commissioner of public works and involves the use of a small cove on Mianus Pond in Greenwich. The plaintiff is Charles Barnard, who lives at 225 Valley Road, and has a dock and boat storage facility on said cove.
The plaintiff filed a revised complaint dated April 29, 1999, which contains three counts. In the first count of his complaint, the plaintiff alleges that the town maintains a 36 inch diameter culvert or pipe under his property which is used to discharge storm water from various catch basins located on adjacent town streets into the Mianus Pond; that the culvert or discharge pipe contains road sand which has accumulated in the cove, which borders on the plaintiffs property, to such an extent that the plaintiff is unable to use the cove for boating purposes and to access Mianus Pond from his property; and that this accumulation is smelly and offensive and constitutes a continuous nuisance. In the second count of the complaint, it is alleged that the defendants' conduct in permitting sand from the catch basins to enter the culvert and be deposited in the cove behind the plaintiffs house is an ongoing trespass which unlawfully prevents the plaintiff from the full use and enjoyment of his property. In the third count, the plaintiff alleges that despite his many requests, the defendants have refused to take any remedial action to dredge the cove, and he seeks a writ of mandamus ordering the defendants to dredge the cove and remove the sand and debris from said cove.
The defendants denied the material allegations of the complaint, and they also filed three special defenses. The first such defense claims that any roadway drainage was into a "natural watercourse." In their second special defense, the defendants claim that the statute of limitations contained in General Statutes § 13a-138a[1] has expired, and also that they are entitled to "governmental immunity." The third special defense is that the drainage and discharge from the culvert underneath the plaintiff have existed for more than fifteen years and the defendant town "claims right by adverse possession."
The case was referred to an attorney trial referee, Edwin K. Dimes, CT Page 4765 Esquire, as authorized by General Statutes § 52-434 (a)(4) and Practice Book § 19-2A, for an evidentiary hearing. The attorney trial referee conducted a trial and then submitted a report to the court containing his factual findings, conclusions and recommendations. The referee made the following factual findings: (1) the plaintiff has owned the subject premises since 1973; (2) a building permit and a certificate of occupancy had been issued for the use of the boathouse in 1954; (3) a prior owner of the premises had given the town permission to install a drainage pipe which exited near the plaintiffs boathouse on the cove leading out to Mianus Pond; (4) during the 1950s and again sometime in the 1960s the town did dredge the cove of accumulated sand and other materials in order to permit the owner of the subject premises to have access to the pond; (5) when the plaintiff purchased the property the water in the cove near the boathouse was about four feet deep; (6) by 1995 the cove had become unusable by the plaintiff because of the build up of sand and other material coming out of the drainage pipe which is under the plaintiffs property; (7) in both 1991 and again in 1995, the town obtained permits to dredge the cove, but never proceeded to do so and now refuses to take any such action; (8) the lowering of the water in the cove is caused "mostly" by sand deposited on town roads by the defendants, which travels through the drainage pipe into the cove; and (9) the accumulation of sand and other material in the cove is unsightly and produces a bad odor.
Based on these findings of fact, the attorney trial referee concluded that: (1) the actions of the defendants were unreasonable, continuing and constituted a nuisance; (2) the only remedy was dredging the cove so that it once again was four feet deep; (3) the plaintiff had proved that he was entitled to a writ of mandamus ordering the defendants to dredge the cove, and further that the defendants should pay the plaintiff $15,000 "for loss of utility of the boathouse" for the last seven years; (4) if the dredging was not done by the defendants within sixty days, the defendants should pay $75,000 to the plaintiff to be used by the plaintiff to do the necessary dredging work himself and also as "something toward Plaintiff's counsel fees," and, additionally, the defendants should be ordered to provide the plaintiff with all necessary permits and approvals to do said dredging on his own; (5) judgment should enter for the defendants on the second count claiming trespass; and (6) the special defenses of statute of limitations and governmental immunity had not been established by the defendants.
As authorized by Practice Book § 19-14,[2] the defendants filed objections to the report of the attorney trial referee as follows: (1) the recommendation that judgment enter for the plaintiff for $75,000 if the defendants did not accomplish the dredging in a timely manner had no basis in fact because the estimate for that work which had been entered CT Page 4766 as an exhibit was $48,000[3] (2) there was no basis in law or fact for attorney's fees; (3) there was no evidence regarding loss of use of the boathouse; (4) the recommendation that the town furnish all necessary permits and approvals for the plaintiff to do the dredging was impossible to comply with because, among other reasons, such permits may be needed from agencies other than the town itself; (5) the effect on the cove was due to "the natural accumulation of sediment," and was not the fault of the defendants; and (6) the plaintiff failed to prove the necessary elements of a claim of nuisance.
Practice Book § 19-17(a) concerns the function of this court in reviewing reports of attorney trial referees and provides that: "[t]he court shall render such judgment as the law requires upon the facts in the report. If the court finds that the . . . attorney trial referee has materially erred in its rulings or that there are other sufficient reasons why the report should not be accepted, the court shall reject the report and refer the matter to the same or another. ., attorney trial referee. ., for a new trial or revoke the reference and leave the case to be disposed of in court."
Killion v. Davis, 257 Conn. 98, 102-103, 776 A.2d 456 (2001), holds that the court's role in reviewing an attorney trial referee's report is as follows: first, "the trial court must review the referee's entire report to determine whether the recommendations contained in it are supported by findings of fact in the report." (Internal quotation marks omitted.) Id., 102. Second, the court must insure that the report does not contain "legal conclusions for which there are no subordinate facts." (Internal quotation marks omitted.) Id. Third, the report must be reviewed to determine if it is "legally and logically correct." (Internal quotation marks omitted.) Id.
Other principles governing attorney trial referee reports provide that: "A reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees." (Citations omitted.) Wilcox Trucking, Inc. v. MansourBuilders, Inc., 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 214 Conn. 804, 573 A.2d 318 (1990). A fact-finder's recommendations should be accepted when "there is nothing that is unreasonable, illogical or clearly erroneous in the findings of the fact finder and the reasonable inferences that may be drawn therefrom." Id.
In terms of the objections filed by the defendants, the plaintiff agrees that there is no basis for the recommendation about legal fees if the defendants do whatever dredging is needed to give the plaintiff use CT Page 4767 of the cove. Thus, this objection by the defendants is sustained. Secondly, the plaintiff agrees that no evidence was introduced regarding loss of use of the boathouse, and this objection is also sustained.
The issues are, first, whether there was sufficient evidence on which the attorney trial referee could base his factual finding that it was town road sand that had come through the drain pipe and out into the cove and rendered it unusable. Second, did the plaintiff prove the necessary elements of a cause of action in nuisance. The third issue is whether the plaintiff is entitled to a writ of mandamus.
Since a transcript was furnished, the initial inquiry is whether there is support in the record for the referee's findings of fact that were challenged by the defendants. There is indeed sufficient evidence to justify the ruling of the attorney trial referee that the obstruction in the cove that prevented its use by the plaintiff was due to sand coming off the town roads, into catch basins, and through the culvert and into the cove.[4] It is quite evident that the attorney trial referee chose to believe the testimony offered by the plaintiff and not the testimony on behalf of the defendants regarding the reason for the obstruction of the cove. "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony."Beizer v. Goepfert, 28 Conn. App. 693, 706, 613 A.2d 1336, cert. denied,224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
It is true that the attorney trial referee heard contrary testimony that the sediment in the cove did not consist of road sand, but he relied on the testimony of the plaintiff and his witnesses. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely her function as a fact finder." Nor'easterGroup, Inc. v. Colossale Concrete, Inc., 207 Conn. 468, 473, 542 A.2d 692
(1988). Therefore, this court is bound to accept the factual findings by the referee. Tarka v. Filipovic, 45 Conn. App. 46, 54, 694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997).
The next issue is the objection by the defendants that the plaintiff had failed to prove the requisite elements of a common law cause of action in private nuisance. This subject was discussed at some length in the recent case of Pestey v. Cushman, 259 Conn. 345, 788 A.2d 496
(2002). "On the basis of our reexamination of our case law and upon our review of private nuisance law as described by the leading authorities, we adopt the basic principles of § 822 of the Restatement (Second) of Torts and conclude that in order to recover damages in a common-law private nuisance cause of action, a plaintiff must show that the CT Page 4768 defendant's conduct was the proximate cause of an unreasonable interference with the plaintiffs use and enjoyment of his or her property. The interference may be either intentional . . . if defendant intends act that brings about condition found to be nuisance); or the result of the defendant's negligence. Whether the interference is unreasonable depends upon a balancing of the interests involved under the circumstances of each individual case. In balancing the interests, the fact finder must take into consideration all relevant factors, including the nature of both the interfering use and the use and enjoyment invaded, the nature, extent and duration of the interference, the suitability for the locality of both the interfering conduct and the particular use and enjoyment invaded, whether the defendant is taking all feasible precautions to avoid any unnecessary interference with the plaintiffs use and enjoyment of his or her property, and any other factors that the fact finder deems relevant to the question of whether the interference is unreasonable. No one factor should dominate this balancing of interests; all relevant factors must be considered in determining whether the interference is unreasonable." (Internal citations omitted.) Id, 361. Regarding the question of whether the interference is unreasonable, the Supreme Court wrote that: "Ultimately, the question of reasonableness is whether the interference is beyond that which the plaintiff should bear, under all of the circumstances of the particular case, without being compensated." Id. 362.
The attorney trial referee, on the basis of the facts that he found, was justified, both legally and logically, in concluding that the necessary elements of a common law private nuisance cause of action had been established. He found that the plaintiff proved that the defendant's use of the road sand, storm drains and the culvert was, under all the circumstances, an unreasonable, unnecessary and continuing interference with the plaintiffs use of his property.
Moreover, Hillman v. Greenwich, 217 Conn. 520, 528, 587 A.2d 99
(1991), indicates that an action for "private nuisance" lies against a municipality with respect to drainage of surface storm water. This is true even if a violation of General Statutes § 13a-138 has not been established.
In terms of the propriety of the plaintiffs mandamus application, the authority to issue a writ of mandamus is granted to the Superior Court pursuant to General Statutes § 52-485.[5] The standard to be applied by the court in determining whether mandamus will issue is well settled.Town of Stratford v. State Board of Mediation Arbitration, 239 Conn. 32,44, 681A.2d 281 (1996). "Mandamus will issue only if the plaintiff can establish: (1) that the plaintiff has a clear legal right to the performance of a duty by the defendant; (2) that the defendant has no CT Page 4769 discretion with respect to the performance of that duty; and (3) that the plaintiff has no adequate remedy at law."
"Even satisfaction of this demanding test does not, however, automatically compel issuance of the requested writ of mandamus."Hennessey v. Bridgeport, 213 Conn. 656, 659, 569 A.2d 1122 (1990). "In deciding the propriety of a writ of mandamus, the trial court exercises discretion rooted in the principles of equity." Id. "The writ will issue only when the person against whom it is directed has a clear legal obligation to perform the act compelled and the party seeking the writ has a clear legal right to the performance." Gelinas v. West Hartford,225 Conn. 575, 586, 626 A.2d 259 (1993).
The plaintiff has sustained the three pronged burden stated in Town ofStratford v. State Board of Mediation and Arbitration, supra, 239 Conn. 44. As to the first prong, the plaintiff has a clear legal right to the performance of a duty by the defendants, i.e., to not unreasonably interfere with the plaintiffs use and enjoyment of his property.
As to the second prong, it is not within the defendants' discretion to refuse to dredge the cove belonging to the plaintiff when the cause of the problem was road sand coming from town streets. As the attorney trial referee found, on two previous occasions the defendant town had taken out permits to dredge the cove, but never proceeded to carry out the work.
Finally, as to the third prong the plaintiff does not have an adequate remedy at law because it is the defendants' job, not that of the plaintiff, to clear this cove and they have refused the plaintiffs requests to do so. The plaintiff is not seeking money damages. He just wants the cove put back in the condition it was before the defendants' road sand began accumulating and preventing use of the cove for boating purposes for the last seven years.
For the foregoing reasons, the report of the attorney trial referee is accepted and the plaintiffs request for the issuance of a writ of mandamus is granted. The defendants therefore should move with reasonable dispatch to dredge the cove to a depth of four feet if reasonably possible. This court will maintain continuing jurisdiction in the event that a dispute arises with respect to whether the defendants are responding to this writ of mandamus with such reasonable dispatch.
No monetary damages or court costs are awarded.
So Ordered.
Dated at Stamford, Connecticut, this 12th day of April, 2002. CT Page 4770
William B. Lewis, Judge Trial Referee.