CLARIS HAYLETT *v.* COMMISSION ON HUMAN RIGHTS
AND OPPORTUNITIES ET AL.
(13331)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, JS.

Argued March 2—decision released May 24, 1988

*Nancy B. Alisberg,* with whom was *Ira Horowitz,* for
the appellant (plaintiff).

*Charles Krich,* staff attorney, with whom was *Philip
Murphy, Jr.,* commission counsel, for the appellee
(named defendant).

*Sharon M. Geanuracos,* for the appellee (defendant
Hebrew Home and Hospital).

SHEA, J. The only issue in this appeal is whether the
trial court erred in determining that General Statutes

§ 52-49[1] required the plaintiff, Claris Haylett, to designate a return date in her appeal to the Superior Court, which had been taken as authorized by General Statutes §§ 46a-95 (j)[2] and 4-183 (a),[3] within sixty days from the date when the defendant commission on human rights and opportunities (CHRO) mailed its adverse decision to her. We conclude that the specification in § 52-49 that appeals "from orders of commissioners and other administrative officers shall be taken to a return day of the superior court within sixty days after their allowance" is no longer operative and has been superseded by the general return day limitation of "two months after the date of the process" contained in General Statutes § 52-48 (b).[4] Accordingly, we find error

[1] "[General Statutes] Sec. 52-49. APPEALS FROM ADMINISTRATIVE OFFICERS, WHEN RETURNABLE. Appeals from orders of commissioners and other administrative officers shall be taken to a return day of the superior court within sixty days after their allowance; but nothing contained in this section shall be construed to change the time which may be expressly prescribed by statute in any particular case for taking an appeal."

[2] General Statutes § 46a-95 (j) provides: "The commission, any respondent or any complainant aggrieved by a final order of a hearing officer or any complainant aggrieved by the dismissal of his complaint by the commission may appeal therefrom in accordance with section 4-183, except venue for such appeal shall be in the judicial district where the discriminatory practice is alleged to have occurred or in the judicial district in which such person resides or transacts business. The court on appeal shall also have jurisdiction to grant to the respondent or complainant such temporary relief or restraining order as it deems just and suitable, and in like manner to make and enter a decree enforcing or modifying and enforcing as so modified or setting aside, in whole or in part, the order sought to be reviewed."

[3] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

[4] General Statutes § 52-48 (b) provides: "All process shall be made returnable not later than two months after the date of the process and shall designate the place where court is to be held."

in the granting of the defendant's motion to dismiss the appeal for lack of subject matter jurisdiction and remand the case to the trial court with direction to deny that motion.

The complaint alleges that, after the Hebrew Home and Hospital (Hebrew Home), a defendant in this case, had discharged the plaintiff, she filed with the CHRO on March 24, 1981, an age discrimination complaint against her employer. An investigator for the agency initially determined that there was reasonable cause for her charges against the Hebrew Home. After some unsuccessful conciliation efforts, however, the legal division of the CHRO, in reviewing the file before certification to a public hearing, concluded that her case was not "litigation worthy." The CHRO ultimately dismissed the complaint filed with it and notified the plaintiff of this action on March 28, 1985. She requested that the CHRO reconsider its dismissal of her complaint. On March 26, 1986, the agency notified her by mail that this request had been denied.

On April 17, 1986, the plaintiff commenced her appeal of the CHRO's dismissal of her complaint against the Hebrew Home, as authorized by § 46a-95 (j), by service of process. The return day upon which the defendants were summoned to appear in the Superior Court was June 3, 1986. After the CHRO had moved to dismiss the appeal for lack of subject matter jurisdiction, the trial court granted the motion on the ground that the return date specified in the complaint "was more than 60 days beyond March 26, 1986, the date of the . . . decision . . . ." The court concluded, therefore, that the complaint did not comply with the requirement of § 52-49 that appeals from administrative officers "shall be taken to a return day of the superior court within sixty days after their allowance."

· The practice of "allowing" appeals has ancient roots. Prior to the enactment of the appeals statute in 1882, chapter 50 of the 1882 Public Acts, there were no appeals as of right in this state. *State* v. *Caplan,* 85 Conn. 618, 622–24, 84 A. 280 (1912). "The writ of error is the common-law method, and formerly the only method in this State, of carrying up a cause from an inferior to a higher court for the revision of questions of law." Id., 622. A party bringing a writ of error to a higher court first had to obtain an allowance of the writ. "Writs of error shall be allowed and signed, by the judges of the court, to which they are returnable . . . ." General Statutes (1821 Rev.) § 2-72. Our present statutes relating to writs of error still contain the provision that "[a]ll writs of error shall be allowed and signed by a judge of the superior court or by the clerk of the court . . . ." General Statutes § 52-275. Our rules of practice have recently been amended to make it clear that the writ, "if in proper form, *must* be allowed." (Emphasis added.) Practice Book § 4114 (a).

The practice of allowing appeals has been followed in the courts of probate since colonial times; *Orcutt's Appeal from Probate,* 61 Conn. 378, 382, 24 A. 276 (1892); and is recognized by General Statutes § 45-294, which prescribes that a Probate Court "in allowing an appeal, shall make such order of notice to persons interested as it deems reasonable." See *George* v. *St. Ann's Church,* 182 Conn. 322, 324, 438 A.2d 97 (1980). Probate Court judges do not possess the discretionary authority to refuse to allow review by a higher court. A party cannot appeal directly from a refusal to allow an appeal, but may apply to a higher court for a writ of mandamus to compel the Probate Court to allow the appeal. *Williams* v. *Cleaveland,* 76 Conn. 426, 430, 56 A. 850 (1904); *Orcutt's Appeal from Probate,* supra.

Section 52-49 has its origin in a statute regulating appeals from justices of the peace and other inferior courts. "Appeals from judgments of justices of the peace and from other inferior tribunals shall be taken to the return day of the appellate court next after their allowance . . . ." General Statutes (1918 Rev.) § 5588. A provision for allowance of an appeal from a justice of the peace had been contained in an earlier statute; General Statutes (1866 Rev.) c. 5, § 88, p. 19; and the allowance had been deemed a mere "clerical" act of the justice court. *Spencer* v. *Broughton,* 77 Conn. 38, 41, 58 A. 236 (1904). In 1925, § 5588 was amended to include appeals from "orders of commissioners and other administrative officers." Public Acts 1925, No. 201. There is no recorded legislative history concerning this amendment nor can it be ascertained how the allowance of an appeal from "commissioners and other administrative officers" could be obtained. In 1959 an act deleted reference to appeals from justices of the peace and other inferior tribunals, thus leaving only appeals from administrative officials within its scope. Public Acts 1959, No. 28, § 106.

The CHRO contends that § 52-49 requires that, before a party whose complaint has been dismissed by the agency may appeal to the Superior Court, the agency must "allow" the appeal. The CHRO acknowledges that historically the allowance of appeals has been a judicial function. *Brown* v. *McConnell,* 124 U.S. 489, 490, 8 S. Ct. 559, 31 L. Ed. 495 (1888). It argues, however, that the legislature must have intended that administrative agencies assume this judicial function because the 1925 amendment to the statutory predecessor of § 52-49 referred to appeals from administrative officers along with those from justices of the peace. Public Acts 1925, No. 201. The CHRO concedes, however, that there is no authority or other evidence indicating that administrative agencies ever have exercised

the function of "allowing" an appeal as a discrete act. It maintains, nevertheless, that mailing the notice of its final order dismissing the complaint constituted an allowance of the appeal by the agency because, only at that point, does the statute permit the appeal to be instituted.

To treat the mailing of the notice of decision, which marks the start of the period for taking an appeal, as also being the allowance of the appeal has the effect of removing the requirement for any separate act of allowance from § 52-49 and renders that provision of the statute largely superfluous. Such a view, attributing virtually no significance to the reference to an allowance of the appeal except in limiting the return day for the appeal, cannot be reconciled with the intention of the legislature in originally establishing this requirement for appeals from justices of the peace and other inferior courts, at a time when the term "allowance" referred to a specific act of such a court as a condition precedent to an appeal. The term "allowance" continues to be used in that sense in the context of writs of error as well as probate appeals. General Statutes §§ 52-275 and 45-294. To regard the mailing of the notice of decision as also an allowance of the appeal presents the paradox of an agency allowing an appeal from every one of its decisions, whether any such appeal is even contemplated. If we were to agree with the defendant's argument that mailing of the notice of decision is also the allowance of the appeal, we would have to depart significantly from the well established meaning of that term as it has been used in our statutes and decisions.

Our conclusion that the allowance of an appeal referred to in § 52-49 cannot be equated with the start of the period for taking an appeal that is triggered by mailing the notice of decision leaves unresolved the determination of the point in time from which the sixty

day period for the designation of a return day in taking an appeal after its allowance should be measured. The parties appear to agree that the CHRO has no mechanism for allowing appeals in the usual sense of that term. The statutes neither prescribe the procedure for allowing an administrative appeal nor designate the authority that is to perform that function. We are faced with the conundrum that in referencing the sixty day return day limitation to the allowance of an administrative appeal, § 52-49 points to a procedural event that no longer can occur in bringing such an appeal, whether or not it ever did.

We now conclude that whatever problems may have been created by the reference in § 52-49 to the allowance of appeals from administrative agencies without any prescribed procedure for such allowance have been resolved by the enactment of § 4-183 (b)[5] and related provisions of our Uniform Administrative Procedure Act. The statute authorizing the present appeal, § 46a-95 (j), requires only that such an appeal be brought "in accordance with section 4-183," except for a different venue provision. Section 4-183 (b) provides that appeals from administrative agencies "shall be instituted by filing a petition in superior court . . .

---

[5] General Statutes § 4-183 (b) provides: "Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-New Britain within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after mailing of the notice of the decision thereon. Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty days after mailing of the notice of the decision thereon, except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford."

within forty-five days after mailing of the notice of the final decision of the agency . . . ." It is undisputed that the plaintiff filed her petition on April 22, 1986, twenty-seven days after the CHRO mailed notice of its final decision on March 26, 1986, and, therefore, complied with this requirement of § 4-183 (b). It is also uncontroverted that copies of the plaintiff's appeal were served within thirty days after the notice of the final decision of the agency had been mailed, as § 4-183 (b) further requires.

No reference to a return day is contained in § 4-183 (b). We do not view this omission as any indication that there should be no restriction upon the plaintiff's choice of date for the defendant to appear in response to an administrative appeal. The provisions of § 4-183 entitling a person "aggrieved by a final decision" to judicial review and prescribing the procedure for an administrative appeal also contain no reference to the allowance of such an appeal. Because the provision of § 52-49 for such an allowance is inoperative, as we have determined, and there is no precise point in our present procedure for an administrative appeal corresponding to the act of allowance, from which that statute measures its return day limitation, we conclude that the only effective limitation is the broadly applicable provision of General Statutes § 52-48 (b).

Section 52-48 (b) provides that "[a]ll process shall be made returnable not later than two months after the date of the process and shall designate the place where court is to be held." Although we have been unable to identify in our present administrative appeal procedure any step corresponding to the allowance of an appeal, it appears that the date of the process would usually conform closely to the date on which an appeal is allowed where that practice is still followed. See General Statutes §§ 52-275 and 45-294. The "date of the process," of course, refers to the date of the writ of

summons or attachment which must be accompanied by the complaint. General Statutes §§ 52-45a and 52-45b.

The writ of summons in this appeal is dated April 15, 1986,[6] and therefore the plaintiff's designation of the "3th day of June, 1986,"[7] as the return day complied with the two month limitation of § 52-48 (b). Accordingly, we conclude that the trial court erred in dismissing the appeal for failure to comply with § 52-49, which we conclude no longer has any legal force.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to deny the defendant's motion to dismiss.

In this opinion the other justices concurred

[6] In this case the plaintiff obtained a waiver of fees and costs because of her indigency, the order of waiver also being dated April 15, 1986. Service of the appeal documents was not completed until April 17, 1986.

[7] The printed record in this case contains a typographical error, as it indicates that the writ of summons called for the defendants to appear in court on the "30th day of June, 1986." The original complaint designates the return day as the "3th day of June, 1986." The appearance forms filed by the defendants also state a return date of "June 3, 1986."