FELICIA PIEROT BRODY *v.* CARY BRODY
(AC 34183)

Gruendel, Beach and Sullivan, Js.

---

Argued May 16—officially released September 10, 2013

*M. Caitlin S. Anderson,* with whom, on the brief, was *Steven D. Ecker,* for the appellant (defendant).

*Gary I. Cohen,* for the appellee (plaintiff).

GRUENDEL, J. The defendant, Cary Brody, appeals from two of the trial court's judgments granting the motions filed by the plaintiff, Felicia Pierot Brody, for contempt for his failure to comply with support and property distribution orders, and from an order of compliance issued by the trial court.[1] Specifically, the defendant claims that (1) on December 9, 2011, the court improperly found him in contempt because it erroneously found that his noncompliance with the court's support and property distribution orders entered in connection with the parties' marital dissolution was wilful; (2) on March 5, 2012, the court failed to make the necessary finding of wilfulness to support its judgment of contempt; and (3) his appeal of the court's March 12, 2012 order of compliance should be dismissed as moot. We reverse the March 5, 2012 judgment of contempt and affirm the judgments in all other respects.

The following facts, as set forth by this court in a prior appeal, are relevant to the resolution of the defendant's appeal. "The parties met in 1997 and started dating shortly thereafter. The plaintiff was a securities trader and was engaged in the business of 'flipping' initial public offerings of securities. The defendant had worked for two different hedge funds, and, in 1998, he started his own hedge fund, named Colonial Fund, LLC (fund). . . .

"In April, 2000, the parties decided to marry. The parties negotiated and signed a prenuptial agreement, under which they retained their separate assets as disclosed on financial statements that were attached to

---

[1] The defendant asserts that there is a question as to whether the court's March 12, 2012 oral decision is a finding of contempt or an order of compliance. Both parties, however, in their briefs to this court, agree that it was an order of compliance. Because there is no dispute as to this issue, we will not address it.

the prenuptial agreement. At the time of their marriage, the defendant's net worth was approximately $46 million and the plaintiff's net worth was approximately $29 million. On April 29, 2000, the parties were married in Provence, France. . . .

"In 2002, the parties . . . jointly purchased a home on Husted Lane in Greenwich (Husted Lane property) for $5,950,000. Their first child was born in September, 2002. The defendant expressed to the plaintiff that he did not want her to be employed because, as the president of his company, it 'did not look good' for her to be so employed. Furthermore, the defendant stated that he did not want the plaintiff's employees walking through the parties' home and that it was 'no longer an option' for the plaintiff to continue working. Accordingly, the parties agreed that the plaintiff would close her business and focus on raising the children and maintaining the household and that the defendant would pay the family's expenses. . . .

"After acquiring the Husted Lane property, the defendant voluntarily funded essentially all of the household's common expenses. The parties enjoyed a comfortable lifestyle fueled by the defendant's successes at work, and they had a second child. . . .

"During this time, however, the parties began discussing what the plaintiff perceived as the excessive spending of the defendant. Between 2005 and 2008, the plaintiff expressed to the defendant her unhappiness with his purchases of two airplanes, a wine cellar costing in excess of $100,000 and Ferrari automobiles. The defendant was drinking alcoholic beverages more than he had earlier in the marriage, and he was becoming verbally abusive of the plaintiff. From 2007 to 2008, the defendant continued to be verbally abusive of the plaintiff and started to become aggressive sexually with her. The plaintiff made it clear to the defendant that

she was unhappy with his behavior, but the defendant was unreceptive to her concerns.

"Unknown to the plaintiff, the defendant's income had started to decline in 2005. In 2007, the defendant's partner in the fund called the plaintiff to inform her of significant losses in the fund and of hidden trades engaged in by the defendant. In October, 2007, the plaintiff learned, when it was announced publicly, that the Securities and Exchange Commission was prosecuting the fund and the defendant personally. The defendant had been aware of this investigation since July, 2003, but he had not told the plaintiff about it. The defendant assured the plaintiff that she did not have to worry, and the plaintiff continued to support the defendant. In May, 2008, the defendant accepted delivery of a new Ferrari." (Footnote omitted.) *Brody* v. *Brody*, 136 Conn. App. 773, 776–78, 51 A.3d 1121, cert. granted, 307 Conn. 910, 53 A.3d 998 (2012).

"The defendant was served with divorce papers on July 1, 2008. . . . [After a trial], [i]n a memorandum of decision issued March 12, 2010, the court, *Munro, J.*, ordered, among other things, the dissolution of the parties' marriage. In connection with the dissolution judgment, the court ordered the defendant to pay the plaintiff $2,500,000 in lump sum alimony, to be paid as follows: $1 million on or before June 1, 2010, $1 million on or before June 1, 2011, and $500,000 on or before June 1, 2012." (Footnote omitted.) Id., 779. The court also ordered, inter alia, that the defendant pay to the plaintiff child support of $7500 per month, $15,000 in health care expenses, and $250,000 representing the plaintiff's share of the proceeds from a joint loan made to a third party (Lewis loan) and certain of the plaintiff's attorney's fees.

"On July 7, 2009, the [Securities and Exchange Commission (commission) had] obtained a judgment in the

amount of $1,330,054.32 against the defendant in New York federal district court. See *Securities & Exchange Commission* v. *Colonial Investment Management, LLC*, 659 F. Supp. 2d 467, 503 (S.D.N.Y. 2009), aff'd, 381 Fed. Appx. 27 (2d Cir. 2010). This judgment was disclosed to the court during the dissolution proceeding. On September 3, 2010, the court, *Malone, J.*, granted the plaintiff's postjudgment motion for an ex parte restraining order. The order provided in relevant part: 'That the [d]efendant is enjoined and restrained from spending, giving away, dissipating, pledging or in any other way, impairing his interest in any asset disclosed on his September 2, 2010 financial affidavit, including, but not being limited to, interests in investment accounts . . . private placement partnerships, jewelry, wine, or other personal property or any other asset whatsoever, unless the [d]efendant first secures the permission of the [p]laintiff or an order of the court permitting him to invade or dispose of an interest in any such asset.'

"On October 12, 2010, the plaintiff filed a postjudgment motion for contempt. The motion alleged that, in response to the judgment in favor of the commission, the defendant transferred approximately $250,000 from his personal account in the fund to an account for Colonial Investment Management, LLC. After a hearing, the court, *Munro, J.*, granted the motion for contempt in a written order issued November 29, 2010. The order stated in relevant part: '[T]he court finds that the defendant violated the restraining order by transferring funds to facilitate the payment of his court ordered obligation to the . . . [c]ommission pursuant to a judgment entered against him. The defendant argues that his conduct was not contemptuous. Indeed it was. The defendant was subject to a clear and unambiguous order that he could comply with by doing nothing. Instead he made a transfer to facilitate the payment of a creditor he

deemed more of a priority than the plaintiff. While one could argue it was a [Hobson's] choice that the defendant faced, it was still in clear and wilful violation of the injunctive order issued by Judge Malone. Whichever burden of proof is applied, the plaintiff has satisfied it: by clear and convincing evidence this contempt is proven.'" *Brody* v. *Brody*, supra, 136 Conn. App. 797–98.

"As a remedial measure for its November 29, 2010 finding of contempt, the court provided: 'The plaintiff is entitled to a reasonable attorney's fee for prosecuting this motion and shall submit an affidavit for the same within [twenty-one] days. Within [twenty-one] days, the defendant shall inventory all of the watches and all of the wine at his residence, or in his possession or control, and turn over the inventory to the plaintiff. The defendant shall cause all of the same to be delivered to such location as the plaintiff designates at his cost for her to safe keep [pending] appeal; said sum shall be held as security for sums due her under the court's decision until further order of the court.'

"In [another] postjudgment motion for contempt dated January 27, 2011, the plaintiff alleged that, while retrieving the parties' children from the defendant's home, she observed that the defendant was wearing a gold A. Lange & Sohne watch. The plaintiff's motion asserted that the defendant previously had testified, in connection with the court's November 29, 2010 finding of contempt ordering him to turn over his watches to a third party custodian, that he no longer had possession of this watch. The plaintiff maintained that the court should find the defendant in contempt for his failure to deliver this watch to the custodian designated by the plaintiff. After a hearing on this motion, the court, *Wenzel, J.*, found the defendant in contempt in an order issued April 28, 2011." Id., 800–801. The defendant

appealed from the dissolution judgment and these findings of contempt, which this court affirmed.[2] Id., 776.

On December 9, 2011, the court, *Munro, J.,* found the defendant in contempt for failure to pay by the established due dates (1) the first two lump sum payments of alimony totaling $2 million, (2) $15,000 in health care expenses, and (3) $175,000 of the proceeds from the Lewis loan. On March 5, 2012, the court, *Emons, J.,* again found the defendant in contempt for his failure to pay child support. One week later, on March 12, 2012, the court, *Emons, J.,* ordered that the defendant pay to the plaintiff, within thirty days, the $15,000 in health care expenses that were a part of the parties' dissolution judgment. From those judgments, the defendant now appeals.

I

FINDINGS OF CONTEMPT

The defendant first challenges the judgments of contempt rendered on December 9, 2011, and March 5, 2012. He claims that on December 9, 2011, the court improperly found him in contempt because it erroneously found to be wilful his noncompliance with the orders issued as part of the dissolution judgment. The defendant also claims that on March 5, 2012, the court improperly found him in contempt because it failed to make the requisite finding of wilfulness to support a

---

[2] Our Supreme Court has granted certification to appeal this court's decision, limited to the issues of (1) "Did the Appellate Court properly determine that the trial court's judgment was not based upon a finding of adulterous conduct on the part of the defendant?"; (2) "Did the Appellate Court properly determine that a contractual release of 'any and all claims arising out of the plaintiffs investment in [Colonial Fund, LLC]' did not include the plaintiff's claims for alimony arising from the plaintiff's investment in Colonial Fund, LLC?"; and (3) "Did the Appellate Court properly determine that the standard of proof in civil contempt proceedings was the 'preponderance of the evidence' standard?" *Brody* v. *Brody,* 307 Conn. 910, 53 A.3d 998 (2012).

judgment of contempt. We agree only with respect to the March 5, 2012 judgment.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . If the underlying court order was sufficiently clear and unambiguous, we . . . determine whether the trial court abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citation omitted; internal quotation marks omitted.) *Johnson* v. *Johnson*, 111 Conn. App. 413, 420–21, 959 A.2d 637 (2008). "[T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference." (Internal quotation marks omitted.) *Gray* v. *Gray*, 131 Conn. App. 404, 408–409, 27 A.3d 1102 (2011).

"To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Scott* v. *Scott*, 90 Conn. App. 883, 889, 879 A.2d 540 (2005). "The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . . The contemnor must establish that he cannot comply, or was unable to do so." (Citation omitted; internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 532, 710 A.2d 757 (1998).

A

December 9, 2011 Judgment of Contempt

The defendant claims that the court improperly granted the plaintiff's motion for contempt because it erroneously found that his failure to pay $2 million in lump sum alimony and $175,000 of the Lewis loan proceeds was wilful. Specifically, he argues that because of his dearth of financial resources, his failure to pay was not wilful; rather he was simply unable to comply with the orders of the court. We are not persuaded.

In its memorandum of decision on the plaintiff's motion for contempt, after noting that the defendant's failure to pay any portion of the orders was undisputed, the court set forth its findings with respect to the defendant's financial situation: "While [the defendant] has suffered significant adverse financial circumstances over the past eighteen . . . months, during calendar year 2011, he continued to receive income of no less than $55,000 per month through July, 2011, $43,000 in August, 2011, and $50,000 in September, 2011. All the while during this time his company made significant strides reducing its overhead. . . . The defendant has made no more than nominal income since October 14, 2011." The court noted that it considered "both the defendant's wilful nonpayment of any sums from his income . . . and his inability to reach his assets [under the terms of the restraining order]" and further explained the basis for its finding, nevertheless, that the defendant's failure to make the ordered payments was wilful, stating that "[t]he failure of the defendant to pay, even in part, any moneys toward the obligations . . . was wilful. While his affidavits have disclosed that his cash flow has been in the negative, the evidence conclusively demonstrated that [the defendant] has paid many nonessential personal expenses ahead of his

court-ordered obligations to the plaintiff. Therefore, the court concludes that . . . the defendant wilfully failed to pay these clear and unambiguous court orders, at least in part." The court concluded by granting the defendant's request to access assets subject to the restraining order to satisfy his obligations.

The defendant argues that the court erroneously found his failure to pay was wilful because his income had substantially decreased and he could not access his assets, as they were subject to a restraining order. This argument, however, ignores the court's undisputed factual finding that the defendant chose to prioritize the payment of his own nonessential expenses over the payment owed to the plaintiff. In light of the defendant's choice to decline to honor his obligations to the plaintiff, in favor of making expenditures for his own benefit, we cannot conclude that the court erroneously found that his failure to pay any amount in satisfaction of the court's orders was wilful. Because we have determined that the court's finding of wilfulness is supported by the record, we conclude that the court did not abuse its discretion in granting the plaintiff's motion for contempt.

B

March 5, 2012 Judgment of Contempt

The defendant next claims that the court improperly found him in contempt of its order to pay $7500 per month in child support because it did not find that his noncompliance with the order was wilful. We agree.

Following a hearing on the plaintiff's motion for contempt for the defendant's failure to comply with his child support obligations, the court issued an oral decision granting the plaintiff's motion. During the hearing, the defendant testified that he had recently leased a home, for which he had paid $14,000 as a security

deposit, and would pay $7000 per month in rent. When asked by the plaintiff's counsel whether he had borrowed money in the three months preceding the hearing, the defendant testified that he had borrowed $21,000 to secure his rental home and another $20,000. The defendant also testified that he owned a car outright in addition to his leased car, for which the monthly payment was $1400.

The court issued its decision from the bench, stating that "[a]nybody who pays a rent of [$7000] a month and a [$1400] lease payment on a car with loaned money when you have the obligations that you do clearly is not seeing the world in a reasonable way. I am going to find you in contempt . . . ." The court then ordered that the defendant pay in full the child support by the end of the month.[3] The court did not opine as to whether the defendant's failure to pay was wilful.

For the court to properly find a party in contempt, that party's noncompliance with the court's order must be wilful. See *Scott* v. *Scott*, supra, 90 Conn. App. 889 ("[n]oncompliance alone will not support a judgment of contempt" [internal quotation marks omitted]). Here, the court did not address the question of the defendant's wilfulness as a basis for finding him in contempt. Because the court did not make the requisite finding as to the wilfulness of the defendant's failure to pay child support, we conclude that it abused its discretion in granting the plaintiff's motion for contempt.

## II

## ORDER OF COMPLIANCE

Finally, the defendant appears to argue that *his* appeal of the court's order of compliance should be

---

[3] The court permitted the defendant to access his retirement account to pay the child support.

dismissed as moot.[4] Because the doctrine of mootness is inapplicable to the defendant's claim and he has briefed no other arguments in support of his challenge to the order, we do not review the merits of this claim.

After a hearing on March 12, 2012, the court ordered that the defendant comply with its previous orders requiring that he pay to the plaintiff $15,000 to reimburse her for his share of the family's health care expenses. On April 9, 2012, the defendant complied with that order by paying $15,000 to the plaintiff.[5] He now appeals from that order.

A

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) *that the determination of the controversy will result in practical relief to the complainant*. . . .

"Concentrating on the fourth factor for justiciability, [*i*]*t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow*. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any

---

[4] We are confounded as to why the defendant, if he believes his own appeal to be moot, has not elected to withdraw it.

[5] There is no dispute between the parties that the defendant has complied with the court's order.

way. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Adziovski* v. *Elezovski*, 118 Conn. App. 346, 348–49, 985 A.2d 345 (2009). "Mootness implicates this court's subject matter jurisdiction, raising a question of law over which we exercise plenary review." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 279, 933 A.2d 256 (2007).

Although the defendant has made the court ordered payment to the plaintiff, the case is not moot. This court could, if the defendant were to demonstrate reversible error by the trial court, grant the defendant relief from that order. Because there is practical relief that this court could offer to the defendant, we cannot conclude that his appeal is moot.

B

The defendant, in his appellate brief, has set forth no basis for his appeal of the court's order of compliance other than mootness. "[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation

marks omitted.) *Paoletta* v. *Anchor Reef Club at Branford, LLC*, 123 Conn. App. 402, 406, 1 A.3d 1238, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010). Because this court will not supply an argument where the appellant has presented none, we do not reach the merits of his claim. See id., 408 ("[t]his court is not an advocate for any party" [internal quotation marks omitted]).

The judgment of contempt rendered on March 5, 2012 is reversed; the judgments are affirmed in all other respects.

In this opinion the other judges concurred.