******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHARLES PRENDERVILLE, ADMINISTRATOR
(ESTATE OF COREY PRENDERVILLE),
ET AL. *v.* CHRISTOPHER
SINCLAIR ET AL.
(AC 36931)

DiPentima, C. J., and Mullins and Norcott, Js.

*Argued December 7, 2015—officially released April 12, 2016*

(Appeal from the Superior Court, judicial district of
Middlesex, Marcus, J.)

*Tracey E. Hardman*, for the appellants (plaintiffs).

*Diana M. Carlino*, with whom, on the brief, was
*James F. Biondo*, for the appellees (defendants).

*Opinion*

MULLINS, J. The plaintiffs, Charles Prenderville, individually and as administrator of the estate of Corey Prenderville, and Alice Prenderville, appeal from the judgment of the trial court dismissing their action against the defendants, Christopher Sinclair, a neurologist, and River Valley Neurology, LLC. On appeal, the plaintiffs claim that the court improperly (1) denied their motion to amend the return date, and (2) granted the defendants' motion to dismiss for lack of personal jurisdiction. We disagree, and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant undisputed facts and procedural history. After the death of their son, Corey Prenderville, the plaintiffs commenced a medical malpractice action against the defendants by service of process on August 29, 2013. The summons and complaint were dated April 1, 2013, and bore a return date of May 7, 2013. The plaintiffs returned process to court on September 9, 2013.

On November 1, 2013, the defendants moved to dismiss the plaintiffs' action on the following grounds: (1) the court lacked personal jurisdiction because the plaintiffs failed to comply with the time limits for service and return of process established by General Statutes §§ 52-46[1] and 52-46a[2] when they served process 114 days after the return date and returned process to court 125 days after the return date; and (2) if the return date was amended, they would be prejudiced by the expiration of the statute of limitations,[3] which would prevent them from impleading a third party defendant, and by the passage of the deadline to file an apportionment complaint.[4]

On January 17, 2014, the plaintiffs objected to the motion to dismiss, moved to amend the return date, and filed a proposed amended summons and complaint bearing a return date of October 29, 2013. In their motion to amend, the plaintiffs argued that amendment of the return date was proper because (1) Connecticut has a strong preference for curing circumstantial defects to allow a case to be heard on its merits, which is embodied in General Statutes § 52-123,[5] (2) it was in accordance with "the precedent of *Coppola* v. *Coppola* [243 Conn. 657, 665–66, 707 A.2d 281 (1998)]," (3) it would bring process into compliance with General Statutes § 52-48 (b)[6] as well as §§ 52-46 and 52-46a, and (4) any noncompliance with § 52-48 (b) was the result of "intentional and misleading actions of the defendant Sinclair," from which the defendants should not be permitted to benefit.

In their objection to the motion to dismiss, the plaintiffs conceded noncompliance with §§ 52-46 and 52-46a but argued that the motion nevertheless should be denied because (1) the court should permit amendment

of the return date to comply with the applicable statutes, (2) a motion to dismiss is not the proper vehicle for a statute of limitations defense, (3) even if a motion to dismiss is a proper vehicle for raising a statute of limitations defense, in this case, the statute of limitations should be tolled by the doctrines of fraudulent concealment and equitable estoppel, and (4) "any late filing was due to accident, mistake, or inadvertence based significantly on the defendant Sinclair's actions and fraudulent misrepresentations . . . ."[7]

On May 16, 2014, the court issued a memorandum of decision, in which it denied the motion to amend, granted the motion to dismiss, and rendered a judgment of dismissal. In particular, the court determined that the return date could not be amended to comply with §§ 52-46 and 52-46a without running afoul of § 52-48 (b). The court also determined that § 52-123 was not the proper vehicle for curing the plaintiffs' failure to serve process in accordance with §§ 52-46 and 52-46a. The court then determined that permitting the amendment of the return date would cause the defendants to suffer prejudice because the untimeliness of the action would preclude them from impleading a third party defendant or serving an apportionment complaint. As a result, the court held that it lacked personal jurisdiction over the defendants. This appeal followed.[8] Additional facts will be set forth as necessary.

I

The plaintiffs claim that the court improperly denied their motion to amend the return date. Their claim is twofold. First, they argue that the court incorrectly concluded that amendment of the return date was not proper pursuant to *Coppola* and General Statutes § 52-72.[9] Second, they argue that the court improperly failed to consider that any prejudice the defendants would have suffered as a result of an amendment of the return date was a result of their own allegedly fraudulent or otherwise wrongful conduct. The plaintiffs also advance a general public policy argument that an amendment should have been permitted because § 52-123 embodies a preference for resolving a case on its merits. For the following reasons, we conclude that the court properly denied the motion to amend.

We first set forth the standards governing our review of this claim. In general, "whether to allow an amendment to the pleadings rests within the discretion of the trial court." *Miller* v. *Fishman*, 102 Conn. App. 286, 291, 925 A.2d 441 (2007), cert. denied, 285 Conn. 905, 942 A.2d 414 (2008). To the extent the plaintiffs challenge the court's statutory construction, they present an issue of law over which our review is plenary. *Marchesi* v. *Board of Selectmen*, 309 Conn. 608, 614, 72 A.3d 394 (2013).

At the outset of our discussion, we note that we, like

the trial court, agree with the plaintiffs that § 52-123 embodies a public policy favoring the resolution of a case on its merits and allowing the amendment of circumstantial errors. See, e.g., *Boyles* v. *Preston*, 68 Conn. App. 596, 603, 792 A.2d 878 ("It is not the policy of our courts to interpret rules and statutes in so strict a manner as to deny a litigant the pursuit of its complaint for mere circumstantial defects. . . . Indeed, § 52-123 . . . protects against just such consequences, by providing that no proceeding shall be abated for circumstantial errors so long as there is sufficient notice to the parties." [Internal quotation marks omitted.]), cert. denied, 261 Conn. 901, 802 A.2d 853 (2002).

Nevertheless, "[o]ur Supreme Court has repeatedly held that § 52-123 is used to provide relief from defects in the text of the writ itself but is not available to cure irregularities in the service or return of process. [It never has] held to the contrary. *Rogozinski* v. *American Food Service Equipment Corp.*, 211 Conn. 431, 434, 559 A.2d 1110 (1989);[10] see also *Rocco* v. *Garrison*, 268 Conn. 541, 557, [848] A.2d [352] (2004); *Hillman* v. *Greenwich*, 217 Conn. 520, 527, 587 A.2d 99 (1991); *Pack* v. *Burns*, 212 Conn. 381, 386, 562 A.2d 24 (1989) . . . ." (Citation omitted; footnotes altered; internal quotation marks omitted.) *Kobyluck* v. *Planning & Zoning Commission*, 84 Conn. App. 160, 167, 852 A.2d 826, cert. denied, 271 Conn. 923, 859 A.2d 579 (2004).

The plaintiffs' service of process 114 days after the return date and their return of process 125 days after the return date, in violation of §§ 52-46 and 52-46a, are not defects in the text of the writ itself. Rather, these defects are irregularities in the service and return of process. As such, they are not defects from which § 52-123 can provide the plaintiffs relief. With the stated policy in mind, however, we proceed to a discussion of the plaintiffs' two principal claims with regard to the denial of their motion to amend.

A

The plaintiffs argue that the court incorrectly concluded that § 52-72 and *Coppola* did not permit amendment of the return date to a date more than two months after the date of process. Specifically, they argue that the court misconstrued "the date of the process" as used in § 52-48 (b), which limits the time between the date of the process and the return date to two months. The plaintiffs argue that "the date of the process" refers to "the date process was actually factually served," which was August 29, 2013, not the date reflected on the writ of summons, which was April 1, 2013. We are not persuaded.

We acknowledge that § 52-72 mandates that "any court shall allow a proper amendment to civil process which is for any reason defective." General Statutes § 52-72 (a); *Concept Associates, Ltd.* v. *Board of Tax*

*Review*, 229 Conn. 618, 626, 642 A.2d 1186 (1994) (§ 52-72 is mandatory). In *Coppola*, our Supreme Court determined that "[t]he legislature, in enacting § 52-72, expressed an intent to reject the draconian result of dismissal of the plaintiff's cause of action because of a defect involving the return date." *Coppola* v. *Coppola*, supra, 243 Conn. 665. The court in *Coppola* concluded that "[t]he construction of the term defective [as used in § 52-72] to permit an amendment of the return date to correct the plaintiff's failure to return process six days prior to the return day effectuates the statute's remedial purpose and statutory policy of amend[ing] . . . otherwise incurable defects that go to the court's jurisdiction." (Internal quotation marks omitted.) Id. "[S]uch an interpretation is consistent with our expressed policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court." (Internal quotation marks omitted.) Id. Thus, in adherence to our stated policy, as the court in *Coppola* explained, an erroneous return date is a curable defect.

Notwithstanding the remedial purpose and policy expressed in § 52-72, however, the court in *Coppola* also recognized that for an amendment to be "proper" within the meaning of § 52-72, the amended return date must comply with § 52-48 (b). "A return date . . . must comply with the time limitations set forth in § 52-48 (b). Section 52-48 (b) requires that '[a]ll process shall be made returnable not later than two months after the date of the process . . . .' Section 52-48 (b), therefore, with its two month limit, circumscribes the extent to which a return date may be amended." Id., 666–67.

As used in § 52-48 (b), "[t]he 'date of the process,' of course, refers to the date of the writ of summons or attachment which must be accompanied by the complaint." *Haylett* v. *Commission on Human Rights & Opportunities*, 207 Conn. 547, 554–55, 541 A.2d 494 (1988); see also *Coppola* v. *Coppola*, supra, 243 Conn. 667 n.12 (noting that amended return date of August 22, 1995, complied with § 52-48 [b] where date of writ of summons was June 25, 1995); *Olympia Mortgage Corp.* v. *Klein*, 61 Conn. App. 305, 306, 310, 763 A.2d 1055 (2001) (amended return date of May 11, 1999, complied with § 52-48 [b] where date of writ of summons was March 12, 1999).

In the present case, the court correctly interpreted "the date of the process" to refer to the date of the writ of summons, April 1, 2013. *Haylett* v. *Commission on Human Rights & Opportunities*, supra, 207 Conn. 554–55. Consequently, to be in compliance with § 52-48 (b), process had to be returnable to court no later than June 1, 2013. The only amended return date proposed by the plaintiffs was October 29, 2013. This date was not in compliance with the requisite two month time restriction imposed by § 52-48 (b).

Therefore, the court properly concluded that amendment of the return date to a date that was well beyond two months from the date of process would not be proper because such an amendment would violate § 52-48 (b). Accordingly, the court properly concluded that the return date could not be amended pursuant to § 52-72. See *Ribeiro* v. *Fasano, Ippolito & Lee, P.C.*, 157 Conn. App. 617, 631, 117 A.3d 965 (2015) (affirming dismissal of plaintiff's action where "there is no date to which [the trial court] could permit the plaintiff to amend the return date and remain in compliance with the mandatory requirements of both § 52-48 (b) and § 52-46a").[11]

B

The plaintiffs also argue that the court should have considered that any prejudice the defendants would have suffered as a result of an amendment of the return date was a result of their own allegedly fraudulent or otherwise wrongful conduct. We conclude that this issue is moot.

"[I]t is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . In determining mootness, the dispositive question is whether a successful appeal would benefit the plaintiff or defendant in any way. . . . Mootness implicates this court's subject matter jurisdiction, raising a question of law over which we exercise plenary review." (Citation omitted; emphasis omitted; internal quotation marks omitted.) *Brody* v. *Brody*, 145 Conn. App. 654, 666–67, 77 A.3d 156 (2013).

Here, the plaintiffs failed to comply with §§ 52-46 and 52-46a, and their proposed amended return date could not bring their process into compliance with those two statutes and § 52-48 (b). Thus, because the plaintiffs' only proposed amended return date ran afoul of these statutory restrictions and there was no proposed date that would comply with these statutes, the inquiry into whether amendment is proper under § 52-72 is at an end. See *Ribeiro* v. *Fasano, Ippolito & Lee, P.C.*, supra, 157 Conn. App. 631 (determining that trial court correctly concluded that no amended return date would comply with mandatory requirements of both §§ 52-46a and 52-48 [b] and affirming dismissal without considering prejudice).

We acknowledge that the trial court determined that the defendants would suffer prejudice if the return date was amended because they would be precluded from impleading a third party defendant or serving an apportionment complaint. That determination was extraneous, however, in light of the court's conclusion that the return date could not be amended to comply with the applicable statutes.

Indeed, because, under the circumstances of this

case, the court's conclusion that the defendants would suffer prejudice was unnecessary to its determination that the return date could not be amended, any consideration of the propriety of the court's ruling on prejudice would serve no purpose on appeal. Stated differently, no practical relief would follow from a determination that the defendants suffered no prejudice, given that the plaintiffs did not comply with the statutes pertaining to service and return of process. Accordingly, because our resolution of this issue in the plaintiffs' favor would not benefit them in any way, the issue is moot. *Brody* v. *Brody*, supra, 145 Conn. App. 667.

In sum, we conclude that the court properly determined that the requested amendment was not proper pursuant to § 52-72 because the amended return date would not comply with § 52-48 (b).

## II

Having concluded that the court properly disallowed amendment of the return date, we turn to the plaintiffs' claim that the court improperly granted the defendants' motion to dismiss. The plaintiffs rest this claim on three arguments: (1) the court incorrectly determined that noncompliance with §§ 52-46 and 52-46a deprived it of personal jurisdiction; (2) their good faith attempts at timely service of process, coupled with the defendants' attempts to evade service, conferred personal jurisdiction on the court; and (3) the court failed to consider their arguments that the untimely service was caused by the defendants' fraudulent concealment or other wrongdoing, or that the defendants should be equitably estopped from asserting the statute of limitations. We do not agree.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Cuozzo* v. *Orange*, 315 Conn. 606, 614, 109 A.3d 903 (2015). "A motion to dismiss . . . essentially assert[s] that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . [O]ur review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous." (Internal quotation marks omitted.) *Merrill* v. *NRT New England, Inc.*, 126 Conn. App. 314, 318, 12 A.3d 575 (2011), appeal dismissed, 307 Conn. 638, 59 A.3d 171 (2013) (certification improvidently granted).

## A

The plaintiffs argue that the court incorrectly determined that their noncompliance with the applicable service of process statutes deprived it of personal juris-

diction. We disagree.

"A defect in process . . . implicates personal jurisdiction . . . . [W]hen a particular method of serving process is set forth by statute, that method must be followed. . . . Unless service of process is made as the statute prescribes, the court to which it is returnable does not acquire [personal] jurisdiction." (Internal quotation marks omitted.) *Pedro* v. *Miller*, 281 Conn. 112, 117, 914 A.2d 524 (2007). Both §§ 52-46 and 52-46a are mandatory, and failure to comply with their requirements as to the time when process shall be served and returned renders the plaintiff's action vulnerable to a motion to dismiss for lack of personal jurisdiction. *Daley* v. *Board of Police Commissioners*, 133 Conn. 716, 719, 54 A.2d 501 (1947) (discussing General Statutes [Supp. 1941] § 5462, predecessor to § 52-46); *Merrill* v. *NRT New England, Inc.*, supra, 126 Conn. App. 320 (discussing § 52-46a).

As discussed in part I A of this opinion, the court properly determined that it could not permit amendment of the plaintiffs' return date to comply with §§ 52-46 and 52-46a because the amended return date would not comply with § 52-48 (b). As a result, process did not comply with the mandatory requirements of §§ 52-46 and 52-46a, rendering the plaintiffs' action vulnerable to a motion to dismiss for lack of personal jurisdiction. Accordingly, the court properly granted the defendants' motion to dismiss on this ground.

B

The plaintiffs argue that the court nevertheless should have concluded that it had personal jurisdiction over the defendants because "[n]otice of a complaint coupled with good faith attempted service is sufficient to confer jurisdiction where a party is evading service of process"; (internal quotation marks omitted) *Bove* v. *Bove*, 93 Conn. App. 76, 82, 888 A.2d 123, cert. denied, 277 Conn. 919, 895 A.2d 788 (2006); and, in the present case, the defendants should not have been permitted to benefit from evading service by improperly dissolving River Valley Neurology, LLC. The plaintiffs argue that they "did rely in good faith on the information provided by the Secretary of the State that Dr. Sinclair was located at 557 Saybrook Road, Middletown, CT. . . . If Dr. Sinclair was no longer available for service at that address . . . he was required to file a notice of new address. . . ."[12] His failure to do so, the plaintiffs argue, caused their initial ineffective service. We disagree.

In their objection to the motion to dismiss, the plaintiffs alleged a course of conduct by the defendants that they argued was calculated to delay commencement of the action and thwart service of process—namely, the defendants took eight months to comply with the plaintiffs' medical records requests[13] and, after finally com-

plying, closed their business office without leaving a forwarding address. In support of these claims, the plaintiffs submitted numerous exhibits.

In one such exhibit, an affidavit by State Marshal Louis Aresco of Middlesex county, Aresco avers that process was placed in his hands on April 2, 2013, and, on the following day, he attempted service, but "Sinclair'[s] offices at River Valley Neurology at 577 Saybrook Rd. . . . [were] closed with no forwarding address for the business." In another exhibit, an undated note, Aresco advises the plaintiffs that "Dr. Sinclair closed his office at 577 Saybrook Rd. Mdtn. over 2 years ago. No forwarding. . . . I can't serve in Madison, or Windsor because . . . service started in Middlesex County."

Additionally, the record reveals the following. On April 2, 2013, the writ of summons that the plaintiffs gave to Aresco listed 41 Copperfield Drive, Madison, as Sinclair's abode address. This same address was listed with the Secretary of the State as an address associated with River Valley Neurology, LLC. On August 29, 2013, the plaintiffs effectuated service on the defendants by abode service on Sinclair at 41 Copperfield Drive, Madison.

"[T]here is no exclusive means for service on a limited liability company. Although General Statutes § 34-105 (a) provides that process may be served upon the limited liability company's statutory agent for service, subsection (e) of § 34-105 expressly states that [n]othing contained in this section shall limit or affect the right to serve any process, notice or demand required or permitted by law to be served upon a limited liability company in any other manner permitted by law." (Internal quotation marks omitted.) *Little* v. *Mackeyboy Auto*, *LLC*, 142 Conn. App. 14, 20, 62 A.3d 1164 (2013); see also id., 19–20 (service proper when made on general manager, not registered agent). Section 34-105 (d),[14] for example, provides for abode service on any manager of the limited liability company, the very method of service used by the plaintiffs in this case on August 29, 2013.

Here, the record belies the plaintiffs' claim that the defendants were evading service and demonstrates that the plaintiffs' own delay in utilizing available methods of service caused the noncompliance with the applicable service statutes, and, accordingly, deprived the court of personal jurisdiction over the defendants. Indeed, as an exhibit to their objection to the motion to dismiss, the plaintiffs submitted printouts from the Secretary of the State's website, which show that River Valley Neurology, LLC, was dissolved on April 8, 2013. On both printouts, which are dated before and after the date of dissolution, Sinclair is listed both as the agent for service and the principal of River Valley Neurology, LLC. As principal, his residence address is listed as 41 Copperfield Drive, Madison. As agent, his residence address

is listed as 410 Lantern Way, Windsor. His business address in both capacities is listed as 577 Saybrook Road, Middletown.

Accordingly, when the plaintiffs failed to serve Sinclair as agent for service at his business address, they had both the necessary information and the statutory authorization to effectuate timely abode service.

The plaintiffs make much of the fact that service could not be effectuated at the Saybrook Road address and point to Aresco's note as proof that the defendants were evading service by closing the office there. Aresco's advice in the note that he "can't serve in Madison, or Windsor," however, indicates, like the summons does, that the Copperfield Drive address was available to the plaintiffs at least since April 1, 2013. The plaintiffs' demonstrated knowledge of the address at which they eventually served the defendants and the absence of any documented hurdles to effectuating timely service at this address do not lead us to conclude that the trial court should have found that the defendants were attempting to evade service.

The plaintiffs argue that the defendants' procedurally improper dissolution of River Valley Neurology, LLC, was such a hurdle to timely service of process. We are not persuaded.

Although the plaintiffs argue that Sinclair, as registered agent for service, failed to notify the Secretary of the State of a change in his business address in violation of General Statutes § 34-104; see footnote 12 of this opinion; both the record and statutory provisions applicable to service on a limited liability company demonstrate that alternative methods of service were available to the plaintiffs. See General Statutes § 34-105 (a), (d), and (e); see also General Statutes § 52-57 (a). Because Sinclair was always available for abode service, his failure to notify the Secretary of the State is irrelevant; it did not prevent abode service. It was instead the plaintiffs' failure to use an alternative method of service once their original attempt failed that caused the untimely service and return of process.[15]

Accordingly, the court did not err when it did not conclude that the defendants were evading service of process or benefiting from the allegedly improper dissolution of River Valley Neurology, LLC.

C

Finally, the plaintiffs argue that the court improperly failed to consider their arguments that the statute of limitations was tolled by the defendants' fraudulent concealment or that the defendants should be equitably estopped from asserting the statute of limitations. Specifically, they argue that the court should have applied the doctrines of fraudulent concealment and equitable estoppel to toll the statute of limitations in this case because the defendants should not be permitted to ben-

efit from any delay that they caused by responding late to the plaintiffs' requests for medical records. We are not persuaded.

In the trial court proceeding, as we have noted, the defendants argued that dismissal was proper because, among other reasons, they were prejudiced by the expiration of the statute of limitations which prevented them from impleading a third party defendant. The plaintiffs responded that a motion to dismiss was not the proper vehicle for raising a statute of limitations defense, and, even if it was, the statute of limitations should be tolled in this case either because the defendants engaged in fraudulent concealment or because they were estopped by their own wrongful conduct from asserting the statute of limitations. The defendants replied that they had not asserted the statute of limitations as a defense but instead had used it to illustrate the prejudice that would flow from amendment of the return date.

Upon determining that the defendants would suffer prejudice if an amendment was allowed; see part I B of this opinion; the court noted in a footnote to its memorandum of decision that "the defendants are not raising the statute of limitations argument as a defense, but rather as a form of prejudice. Since this court is not deciding the statute of limitations claim by way of this motion to dismiss, the court also need not discuss the plaintiffs' arguments that the statute of limitations was tolled (1) by the doctrine of fraudulent concealment, (2) by estoppel, (3) because of . . . Sinclair's own fraudulent attempts to avoid service, or (4) because of unavoidable mistake, inadvertence, or accident; nor does the court need to address the plaintiffs' argument that the defendants should not be permitted to benefit from their own wrongdoing with respect to the dissolution procedure."

The court's memorandum of decision makes clear that it concluded that the defendants did not raise a statute of limitations defense by way of the motion to dismiss. Accordingly, the court did not consider the merits of any such defense. Because the court did not consider the viability of a statute of limitations defense, it also declined to consider whether either of the doctrines on which the plaintiffs relied tolled the statute of limitations. The plaintiffs cite no authority for their assertion that the court should have considered these tolling arguments related to the statute of limitations, at the motion to dismiss stage, when the defendants' claim was not that the plaintiffs' case should be dismissed for having been filed outside of the statute of limitations, but rather that the defendants would suffer prejudice due to the running of the statute of limitations foreclosing them from impleading a third party defendant. We conclude that the court properly declined to do so.

For the foregoing reasons, the court properly granted the defendants' motion to dismiss.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-46 provides in relevant part: "Civil process . . . if returnable to the Superior Court, [shall be served] at least twelve days, inclusive, before [the sitting of the court]." We have interpreted this to mean that "[a]ll process must be served at least twelve days before the return date, including the day of service and excluding the return day." *Hibner* v. *Bruening*, 78 Conn. App. 456, 458, 828 A.2d 150 (2003).

[2] General Statutes § 52-46a provides in relevant part: "Process in civil actions . . . returnable to the Superior Court . . . [shall be returned] to the clerk of such court at least six days before the return day."

[3] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

[4] General Statutes § 52-102b (a) provides in relevant part: "A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. . . ."

[5] General Statutes § 52-123 provides: "No writ, pleading, judgment or any kind of proceeding in court or course of justice shall be abated, suspended, set aside or reversed for any kind of circumstantial errors, mistakes or defects, if the person and the cause may be rightly understood and intended by the court."

[6] General Statutes § 52-48 (b) provides: "All process shall be made returnable not later than two months after the date of the process and shall designate the place where court is to be held."

[7] The plaintiffs also argued that the motion to dismiss was untimely. The court rejected that argument, and the plaintiffs have not challenged that determination on appeal.

[8] After the parties filed their briefs and prior to oral argument, this court decided *Ribeiro* v. *Fasano, Ippolito & Lee, P.C.*, 157 Conn. App. 617, 117 A.3d 965 (2015). We ordered the parties to file supplemental briefs to address the effect, if any, of that case on the present appeal.

[9] General Statutes § 52-72 provides in relevant part: "(a) Upon payment of taxable costs, any court shall allow a proper amendment to civil process which is for any reason defective.

"(b) Such amended process shall be served in the same manner as other civil process and shall have the same effect, from the date of the service, as if originally proper in form. . . ."

[10] In *Rogozinski*, our Supreme Court held that § 52-123 was unavailable to cure the defect when the return of process was made five days before the return date in violation of § 52-46a. *Rogozinski* v. *American Food Service Equipment Corp.*, supra, 211 Conn. 432, 435.

[11] The plaintiffs also briefed a claim that even in the event the court properly construed the statutory term "the date of the process," to refer to April 1, 2013, the date of the writ of summons, it should have amended both that date and the return date sua sponte to permit compliance with § 52-48 (b). They argue that the date of the process should have been amended pursuant to General Statutes § 52-128, which provides in relevant part that "[t]he plaintiff may amend any defect, mistake or informality in the writ, complaint, declaration or petition, and insert new counts in the complaint or declaration, which might have been originally inserted therein, without costs, within the first thirty days after the return day and at any time afterwards on the payment of costs at the discretion of the court . . . ." At oral argument, however, the plaintiffs expressly abandoned any claim that the court, sua sponte, should have amended the date of the writ, and, accordingly, we do not consider it.

[12] General Statutes § 34-104 (c) provides in relevant part: "If the statutory agent for service changes his or its address within the state from that appearing upon the record in the office of the Secretary of the State, the limited liability company shall forthwith file with the Secretary of the State notice of the new address. . . ."

[13] The alleged eight month delay occurred prior to the month of April, 2013.

[14] General Statutes § 34-105 (d) provides in relevant part: "[A]ny process, notice or demand in connection with any action or proceeding required or permitted by law to be served upon a limited liability company which is subject to the provisions of section 34-104 may be served upon any member of the limited liability company in whom management of the limited liability company is vested or any manager of the limited liability company by any proper officer or other person lawfully empowered to make service by leaving a true and attested copy of the process, notice or demand with such member or manager or by leaving it at such member's usual place of abode in this state or, in the case of a manager who is a natural person, at such manager's usual place of abode in this state."

[15] In this regard, the case of *Bove* v. *Bove*, supra, 93 Conn. App. 76, on which the plaintiffs rely, is distinguishable. In *Bove*, the defendant affirmatively evaded the plaintiff's attempts to serve him. The sheriff attempting service "acknowledged the defendant, but, instead of receiving service, the defendant jogged across the street onto a beach. Because the defendant did not allow the sheriff to serve him with the papers, the sheriff put the process in the defendant's mailbox. When the defendant became aware that the sheriff had placed papers in his mailbox, he contacted the United States Postal Service. A letter carrier then removed the papers and took them to a supervisor, who contacted the sheriff's department. A representative from the sheriff's department later removed the papers." (Footnote omitted.) Id., 80–81. In the present case, as we have discussed, the record belies the plaintiffs' allegations that the defendants acted affirmatively to evade service. Thus, their reliance on *Bove* is misplaced.